September 5, 1979

## 79-64    MEMORANDUM OPINION FOR A DEPUTY ASSOCIATE ATTORNEY GENERAL

### Immigration and Nationality Act—Alien Crewmen— Temporary Landing—Review by Attorney General of Decisions by Board of Immigration Appeals

This responds to a request of your Office for our advice on the issue whether the Seafarers International Union (SIU) has stated a sufficient basis for the Attorney General to direct review pursuant to 8 CFR § 3.1(h)(i) of the Board of Immigration Appeals' (BIA's) decision in this case.[1] After carefully considering the SIU's submission, we do not believe that it has done so.[*]

### I.

The present matter arose when, in February, 1977, the alien crew of the *Dosina,* a Dutch tanker performing lightering operations (which involve bringing to shore crude oil from supertankers in international waters) applied for a conditional permit to land temporarily in the United States pursuant to § 252(a) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1282(a). That provision authorizes an immigration inspector to grant such a permit in his discretion if he finds that the alien applicant is a nonimmigrant crewman. In this case, the immigration inspector questioned whether the crew was eligible for conditional landing permits. But instead of simply refusing the permits, the inspector ordered that they appear at exclusion proceedings before an immigration judge for a determination whether they were excludable immigrants lacking valid immigrant visas.

---

[1] 8 CFR § 3.1(h)(i) provides that the Board shall refer to the Attorney General for review all cases which "[t]he Attorney General directs the Board to refer to him." The question here is whether the SIU has stated a legal basis on which the Attorney General should direct that the case be referred to him for review. This is not a case in which the Chairman of the BIA or a majority of the Board has referred the matter to the Attorney General for his review. *Cf.* 8 CFR § 3.1(h)(ii).

[*] The Attorney General subsequently declined to review the BIA's decision.

In a hearing before an immigration judge, counsel for the crew and the trial attorney for the Immigration and Naturalization Service argued that the crew were *bona fide* alien crewmen and that they were not subject to exclusion. Both contended that the immigration judge lacked jurisdiction under § 235(b) of the Act, 8 U.S.C. § 1225(b), to consider the admissibility of the crew. The judge rejected that contention. He held that the crew were immigrants lacking valid immigrant visas and thus were inadmissible. The judge certified his decision to the BIA for review.

The BIA's decision reached two conclusions: (1) that the crew of the *Dosina* were "alien crewmen" for purposes of the Act; and (2) that they were not subject to the jurisdiction of an immigration judge presiding over exclusion proceedings. The proper procedure, the BIA pointed out, would have been for the immigration inspector to refuse alien crewmen temporary landing permits, rather than to place them in exclusion proceedings.

The definition of an "alien crewman" is as follows:

[A]n alien crewman serving in good faith as such in any capacity required for normal operation and service on board a vessel * * * who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel * * * on which he arrived * * * .[2]

Here, the crew, as found by the BIA, consisted of aliens serving on a foreign vessel. In this connection the BIA found that the crew members were named on lists obtained from an American consul in Mexico each 29 days, as required, and that none of the crew sought to enter for a longer period than that in which the vessel was to be in port, or under any conditions other than those of an alien crewman. Given these findings, the BIA concluded that the crew "clearly" were within the accepted statutory definition of alien crewmen. With this particular conclusion we find no error, and the SIU has presented no basis on which to question it.

The BIA next turned to § 235(b) of the Act, 8 U.S.C. § 1225(b), pursuant to which the exclusion proceedings in this case were held. That subsection states:

Every alien (*other than an alien crewman*), and except as otherwise provided in subsection (c) of this section and in section 273(d), who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detailed for further inquiry to be conducted by a special inquiry officer * * * . [Emphasis added.]

The foregoing provision explicitly excepts from further inquiry before an immigration judge,[3] such as in exclusion proceedings, any "alien crewman." The BIA held that since the *Dosina* crew consisted of alien crewmen,

[2] Section 101(a)(15)(D) of the Act, 8 U.S.C. § 1101(a)(15)(D).

[3] 8 CFR § 1.1(l) provides: "The term 'immigration judge' means special inquiry officer and may be used interchangeably with the term special inquiry officer wherever it appears in this chapter."

the judge lacked jurisdiction to consider whether they were excludable as immigrants. This result would appear to follow directly from the plain language of the statute.

Accordingly, we cannot say that the BIA's substantive analysis of the precise legal issues here was incorrect. Nor can we conclude that the BIA chose to focus on the wrong questions, for it appears plain that if an immigration judge has no jurisdiction to conduct certain proceedings, it is the BIA's responsibility in the first instance to address that matter.

## II.

The SIU urges the Attorney General both to direct that this case be referred to him for review and to reverse the BIA's decision, with the result that the immigration judge's decision would be reinstated. The practical import of this turns on the fact that if the immigration judge's decision were to be reinstated, there would be a precedent for the proposition that aliens are excludable when they appear at a port seeking temporary landing permits as crewmen while performing lightering functions for super-tankers in international waters. Underlying SIU's technical approach is the desire for a precedent favorable to SIU's interest of furthering the job opportunities of American seamen, who apparently believe that they ought to have exclusive rights to perform lightering operations that in the past have been performed, as in this case, by alien crews. Whatever the merits of this as a policy matter, it has no merit as a matter of law in the context of this case.

Two main legal arguments are raised by SIU: (1) that the BIA lacked jurisdiction to review the decision of the immigration judge, and thus the judge's decision should not have been disturbed; and (2) that the BIA committed reversible procedural error. In our view, neither contention is a sufficient basis for the Attorney General to direct that the case be referred to him for review.

The first argument rests on the SIU's interpretation of 8 CFR § 3.4, which provides, in pertinent part, that "(d)eparture from the United States of a person who is the subject to [sic] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken." The SIU notes that prior to the BIA's decision, the crew excluded by the immigration judge had returned to their home country. However, at the time of oral argument before the Board, several of them had once again returned to the *Dosina*, which was then continuing in operation and evidently receiving permission for its alien crew to land temporarily in the United States.[4] Nevertheless, the SIU takes the position that since the BIA knew

---

[4]Execution of an immigration judge's order of exclusion is stayed while the case is before the BIA by means of certification. *See* 8 CFR § 3.6. The BIA noted in its decision that it was not certain on what particular basis the crew of the *Dosina* had been permitted to land subsequent to the immigration judge's decision in this case.

that the crew members had voluntarily left the United States for some time prior to its final decision, 8 CFR § 3.4. required the BIA to rule that "the appeal" should be considered as withdrawn.[5]

A main difficulty with this position is that 8 CFR § 3.4, on its face, speaks of "*deportation* proceedings" (emphasis added), not exclusion proceedings such as occurred in this case, and we have been told informally by the BIA Chairman that in practice the provision has been confined to the deportation context.[6] In addition, the provision refers to "the taking of an *appeal*" (emphasis added). In this case, the immigration judge *certified* his decision to the BIA for review; the matter did not reach the BIA by means of an appeal by an applicant or a district director.[7] Thus, the regulation on its face is not applicable.

The SIU's second basic argument is that the BIA improperly and unfairly denied its motion of November 7, 1977, when, on February 13, 1978, it allowed the SIU to act as an *amicus curiae* in the case. The core of this suggestion is SIU's assertion that SIU's economic interests in the outcome of the case were so great that its view should have been more fully considered by the BIA, such as in oral argument. The problem with this is that SIU's motion was not denied. The motion was entitled "Seafarers International Union of North American Application for Intervention or Alternatively as Amicus Curiae * * *." The alternative relief—participation as an *amicus curiae*—was granted, and so the contention that the BIA improperly failed to state the grounds for denial of the motion as a whole seems to miss the mark.[8]

In the end, we are left with the fact that SIU has requested the Attorney General to direct that the case be referred to him for review and to reverse the BIA decision which is not incorrect, and in procedural terms is not successfully challenged by SIU. Further, important institutional interests are at stake here. It would appear that in a case certified to the BIA in which

---

[5]The SIU makes clear that its argument is distinct from a claim that the controversy was moot. Rather, the SIU's position is that, as a matter of law, 8 CFR § 3.4 ousted the BIA of jurisdiction over the case.

[6]The distinction between exclusion proceedings, designed to determine whether an alien is admissible, and deportation proceedings that occur after an alien has entered the country is a fundamental one in the administration of the immigration laws. *CF.* 9 I&N Dec. 356, 360 (BIA 1961). *Compare* 8 CFR Part 236, dealing with exclusion, *with* 8 CFR Part 243, dealing with deportation.

[7]Pursuant to 8 CFR § 236.6, an immigration judge has authority to certify his decision to the BIA "when it involves an unusually complex or novel question of law or fact." Appeals from orders arising in exclusion proceedings are covered by 8 CFR § 236.7.

[8]Further, although the SIU appears mainly to be concerned that it did not participate in oral argument before the BIA, *see* Motion for Reconsideration at 2-3, 8 CFR § 3.1(e) provides plainly that oral argument will be heard by the BIA "upon request." The SIU's motion of November 7, 1977, did not request oral argument. Apparently the point was raised for the first time in the Motion for Reconsideration of August 15, 1978—one month after the BIA rendered its decision in the case.

the primary issue is whether an immigration judge has jurisdiction to conduct certain exclusion proceedings, the BIA should have power to reach a decision, assuming no contrary law or regulation. Otherwise, an orderly administrative process regarding the resolution of jurisdictional issues might well be jeopardized. For all of these reasons, we consider that the SIU has not presented a valid basis for the Attorney General to direct that the case be referred to him for review.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*