**LAZARESCU v. UNITED STATES.**
. No. 6463.

United States Court of Appeals
Fourth Circuit.
Argued Oct. 7, 1952.
Decided Nov. 10, 1952.

Jack H. Hantman, New York City, (Major & Sintich, New York City, on brief), for appellant.

Thomas G. Gray, Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty., Baltimore, Md. and Abraham Scharf, Naturalization Examiner, U. S. Immigration and Naturalization Service, New York City, on brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and WILLIAMS, District Judge.

DOBIE, Circuit Judge.

This is an appeal by Nicolai Lazarescu (defendant-appellant) from a judgment of the United States District Court for the District of Maryland, entered upon a verdict of guilty by a jury, adjudging that the appellant pay a fine of $500 with costs and be committed to the custody of the Attorney General of the United States for imprisonment in such place of confinement as he may designate for the period of one year, with further commitment in default of payment of fine.

Appellant has been charged with the violation of Section 180, subparagraph (a) of Title 8 of the United States Code Annotated, in that, having been arrested and previously deported from the United States in pursuance of law, he did on or about the 22nd day of September, 1949, feloniously enter the United States, at Baltimore, Maryland, without lawful authorization to do so.

Appellant had been deported from the United States in September, 1940. He was a member of the crew of the S. S. Atlantic Air, which, on September 22, 1949, arrived at the Port of Baltimore. This same day, he was inspected by the Immigrant Inspector at the Port of Baltimore and his admission as a bona fide seaman under Section 3, subdivision 5 of the Act of 1924, 8 U.S.C.A. § 203(5), was entered on the crew manifest. During the six days that the S. S. Atlantic Air remained in Baltimore, the defendant was not discharged and he physically did not leave the ship. He was discharged and did physically leave the ship when the S. S. Atlantic Air, some days later, reached the Port of Norfolk, Virginia.

Two questions are presented by this appeal: (1) Was the District of Maryland the proper venue? and (2) Did the action of the Immigrant Inspector at Baltimore permitting appellant to land there, despite his prior deportation, constitute a lawful entry by appellant into the United States? Both these questions were resolved against appellant in the court below. In overruling appellant's motions in arrest of judgment, for a new trial and for acquittal notwithstanding the verdict, District Judge Chesnut wrote an elaborate opinion. This opinion is reported in 104 F.Supp. 771. We think he ruled correctly on both these questions and that it is not necessary to add materially to what was said in that opinion.

Venue here is controlled by 8 U.S.C.A. § 164, which (so far as is here material) provides:

"The district courts of the United States are invested with full jurisdiction of all causes, civil and criminal, arising under any of the provisions of this chapter. It shall be the duty of the United States district attorney of the proper district to prosecute every such

suit when brought by the United States under this chapter. Such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with such violation may be found."

Section 164 thus prescribes the venue for the prosecution of violations of Chapter 6 of Title 8, 8 U.S.C.A. § 101 et seq. The District of Maryland, then, was the proper venue, under Section 164, if, but only if, the violation occurred at Baltimore. And this depends on whether appellant, in September, 1949, made an "entry," within the meaning of the statute, at Baltimore. Specifically, the question may be thus stated: Where a seaman who had previously been deported, arrives at a port in the United States from a foreign place, and after examination by the immigration authorities, is permitted to enter the United States, but chooses to remain on board the ship and not go ashore until it reaches the next port coastwise, at which port is he deemed to have made a statutory "entry" into the United States?

No case precisely in point has been found. As the District Judge pointed out, clearly inapplicable here are the cases of Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17; Carmichael v. Delaney, 9 Cir., 170 F.2d 239; Pasquale v. Di Karnuth, 2 Cir., 158 F.2d 878. This is likewise true as to United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; United States ex rel. Rubio v. Jordan, 7 Cir., 190 F.2d 573.

In United States ex rel. Patton v. Tod, 2 Cir., 297 F. 385, 396, Circuit Judge Mayer, considering the date of an entry under a different phase of the immigration laws, commented:

"* * * the word 'entry' is used, manifestly to distinguish situations where entry is something different from mere physical arrival at the port.

"* * * it is plain that the Congress had in view the entry after the alien was free from restraint, so that

he could physically enter the country either openly or surreptitiously."

Not without significance here is the fact that, at a hearing by the Immigration Department, appellant, in answer to a question, testified that he had last entered the United States about September 22, 1949, at Baltimore. Important, too, is the administrative custom and practice under which Baltimore is clearly regarded as the port of entry. That view also finds support in the history of the federal immigration statutes.

As was said by District Judge Chesnut in his opinion below, 104 F.Supp. at page 777:

"But when the passenger or seaman is admitted by the Inspector he is then entirely free to go on shore at his pleasure, and his admission by the Inspector constitutes an entry within the meaning of the immigration statutes. In addition, it may be said that there are reasons of practical importance for this view in the administration of the immigration laws. The official records as to passenger and crew are apparently kept at the first port of arrival where the passengers and crew are inspected. As the passenger or seaman is free to land when admitted it is naturally assumed by the Immigration Department that he has so landed and ordinarily there would be no record of the time of his actual landing other than the official list completed by the Inspector after inspection, and retained in the port where the ship first arrived from a foreign port."

Certainly, when a ship enters foreign into a port of the United States, and then proceeds in short order to other ports in this country, it would indeed be difficult to prove at which of these ports a seaman first physically left the ship.

The act of the Inspector in admitting appellant did not, of course, constitute the crime of which appellant was guilty; it simply removed the restraint on defendant which prevented his presence in the port of Baltimore constituting a crime on his part. The port and harbor of Baltimore

is territory of the United States. Entry into that territory even in a vessel amounted to a violation of the act unless appellant was under restraint which prevented his departing from the vessel. When he accepted admission so that this restraint was no longer operative, the crime of entering in violation of the statute was complete.

It is clear here that appellant had been previously deported, that he knew of this, and that no application had been made to the Attorney General for permission to apply for admission to the United States. See Code of Federal Regulations, Title 8, Part 110.52; Title 8, Part 120.19. See, also, Title 8, Part 120.3, defining "entry into the United States."

We must, therefore, affirm the holding of the District Court that Baltimore was the port of entry here within the meaning of the immigration laws, that the statute under which appellant was charged and tried was violated at Baltimore, and that the District of Maryland was the proper venue.

Appellant's second contention is that since the appellant was examined by an Immigrant Inspector at the Port of Baltimore on or about the 22nd day of September, 1949, and was admitted as a bona fide seaman, his entry was lawful and did not constitute a violation of the statute under which the information was laid. We find no merit in this contention and no support for it in the cases cited by appellant. Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433; Ex parte Gouthro, D.C., 296 F. 506, 511; Ex parte Guest, D.C., 287 F. 884; Ex parte Lalime, D.C., 244 F. 279.

On this point, the District Judge, 104 F. Supp. at page 778, stated:

"I think it unnecessary to discuss at any length the contention of defendant's counsel that the action of the Immigrant Inspector at Baltimore in admitting the defendant as an alien seaman was final and binding on the United States. It is not disputed that the defendant had in fact been deported in 1940 and of course knew that to be the case. Nor is there any evidence that he voluntarily disclosed this personally known fact to the Inspector. On the contrary it affirmatively appears by notation on the crew list that the defendant had never been deported. In these circumstances it seems idle to contend that the decision of the Inspector based on facts known to the defendant but unknown to the Inspector and misrepresented to or concealed from him by the defendant could constitute a basis for proper legal entry of the defendant. Counsel for the defendant also argued that the Inspector in admitting the defendant as an alien seaman was exercising authority delegated to him by the Attorney General, and that because the Attorney General under the statutes had the power to grant the alien permission to re-apply for admission, it must be assumed that the official action by the Inspector was correctly based on such action. But there was no evidence that the Attorney General had granted such permission nor indeed that he had ever been requested to do so in the case of this alien."

To this very little need be added.

Appellant's argument that his admission as a seaman under the Immigration Act of 1924, Title 8 U.S.C.A. § 203(5), constituted a lawful admission, ignores Section 25 of the same Act, 8 U.S.C.A. § 223. See, also, 8 U.S.C.A. §§ 102, 180(a), 180(c), 181.

Manifestly the Immigration Inspector had here no authority to admit the appellant to the United States. The Inspector was obviously deceived by the entry on the crew list to the effect that appellant had never been deported. Had the Inspector known of appellant's prior deportation, he would have ordered that appellant be detained on board the ship, as the Inspector did in the case of another member of this crew who had previously been deported and had not obtained permission to re-enter the United States.

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.