MATTER OF A—

In DEPORTATION Proceedings

A-12198196

*Decided by Board June 2, and July 11, 1961*

Deportation proceedings—Jurisdiction—Entry—Stowaway ordered detained on
board who escapes from vessel effects entry.

Where alien stowaway is ordered detained on board, later manages an escape
from the vessel, and remains ashore for nearly two years prior to appre-
hension, held : (1) jurisdiction to proceed under the detention order with-
out hearing has been lost, (2) subject has effected an "entry" into the
United States, and (3) his removal can be enforced only through deporta-
tion proceedings pursuant to section 242 of the Act.

CHARGES :

Order:  Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmi-
grant crewman—Remained longer than permitted (withdrawn).
Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excluda-
ble under section 212(a)(18)—Stowaway.

BEFORE THE BOARD
(June 2, 1961)

DISCUSSION: The case comes forward pursuant to certification
by the special inquiry officer of his order dated April 6, 1961, directing
that the proceedings be terminated.

The record relates to a native and citizen of Greece, 33 years old,
male, single, who last arrived in the United States at the port of
New York as a stowaway on the M/V *Alida Gorthon* on April 24,
1959. He had been discovered on board the vessel before it arrived
at the port of New York. Upon arrival, the respondent was in-
spected by an immigrant inspector and was ordered detained on
board under section 212(a)(18). He was locked up in a cabin on
board the vessel which remained at the dock, but about four or five
hours later managed to escape from the vessel through a porthole.
The respondent has remained in the United States since April 25,
1959, but was served with an order to show cause in expulsion pro-
ceedings on March 24, 1961.

The special inquiry officer's order sets forth that the respondent
was excluded as a stowaway by the primary immigrant inspector

356

without a formal exclusion hearing; that section 273(d) of the Immigration and Nationality Act prohibits the referral of a stowaway to a special inquiry officer for an exclusion hearing under section 235 of the Immigration and Nationality Act and provides that the alien shall have no right of appeal under section 236. Despite the fact that the respondent escaped and went ashore shortly after being ordered detained on board, the special inquiry officer determined that the respondent could be deported under the outstanding detain and deport order and that jurisdiction did not lie with the special inquiry officer under section 242 of the Immigration and Nationality Act to proceed in expulsion proceedings. The special inquiry officer is of the opinion that the respondent is not entitled to receive a hearing in deportation proceedings and did not gain any additional rights by getting ashore while the vessel was in the harbor and while he was under the outstanding exclusion order. He cited no judicial authority to support this opinion.

Section 273(d) of the Immigration and Nationality Act, 8 U.S.C. 1323(d), provides for penalties for failing to detain on board a stowaway until inspection, to detain him after inspection, or to deport him if so ordered by the immigration officer. The last sentence of section 273(d) provides:

The provisions of section 235 for detention of aliens for examination before special inquiry officers and the right of appeal provided for in section 236 shall not apply to aliens who arrive as stowaways and no such alien shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to such regulations as the Attorney General may prescribe for the ultimate departure or removal or deportation of such alien from the United States.

As provided by the last sentence of subparagraph (d) of section 273, the entrant stowaway who is ordered detained on board and deported by a primary inspector is not entitled to an exclusion hearing before a special inquiry officer or to an appeal as provided in sections 235 and 236 of the Act.[1] There appears to be a paucity of judicial decisions regarding this last sentence of section 273(d). The reported decisions relating to this section generally deal with the penalty provisions against steamship owners for bringing in or failing to detain or deport a stowaway. Nor do we quarrel with the cases cited by the Service representative to the effect that the parole of an excluded alien does not affect the status of the alien who is still regarded as stopped at the border and not dwelling in the United States, and has never "entered" the United States within the meaning of the law.[2]

---

[1] Cf. *Matter of B—*, 5—712.
[2] *Kaplan* v. *Tod*, 267 U.S. 228 (1925).

However, we think that neither the last sentence of section 273(d) of the Immigration and Nationality Act nor the cases relating to exclusion and parole are applicable or relevant to the facts present in this case. Here, the respondent, although ordered detained on board as a stowaway, nevertheless effected his entry into the United States. The term "entry" is defined in section 101(a)·(13) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(13), as any coming of an alien into the United States, from a foreign port or place, whether voluntary or otherwise. In the case of *United States ex rel. Fink* v. *Tod*,[3] it was held that when an alien arrives and applies for admission into the United Sttaes, he may be detained and held without warrant until immigration officials have determined whether he is entitled to admission; however, the original jurisdiction to hold and exclude rests upon the custody of his person acquired at the time of his arrival and this original jurisdiction continues until the question of the right to be admitted has been determined and the proceedings before the immigration officials closed. However, if the right to enter and remain in the United States has once been acquired, then the alien could not thereafter have been deprived of that right without notice and an opportunity to be heard and could not have been taken into custody except by a warrant. In the *Fink* case, *supra*, the alien had merely been enlarged on bond and at no time had he been completely discharged from custody. There is no doubt that the original exclusion could have been reopened as long as the alien remained in the custody of immigration officials.[4] Where an alien has been released from custody, jurisdiction to exclude and deport has been lost and thereafter the alien's right to remain in the United States can be determined only in expulsion proceedings.[5]

In the case of *Leng May Ma* v. *Barber*,[6] the Supreme Court observed that our immigration laws have long made a distinction between those aliens who have come to our shore seeking admission (such as the petitioner who had been excluded and paroled) and those aliens who are within the United States after an entry, *irrespective of its legality*. In the latter instance the court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry." The court then noted that for half a century it had held that *detention of an alien in custody* pending determination of his ad-

---

[3] 1 F.2d 246, reversed on confession of ˄rror, 267 U.S. 571 (probably due to effect of medical certification).

[4] *Wong Doon* v. *Cahill*, 78 F.2d 301 (C.A. 9, 1935).

[5] *Matter of V—Q—*, 9—78 (1960) ; *United States ex rel. Tscheremschansky* v. *Shaughnessy, Civ. No.* 52–761 (S.D. N.Y., Dec. 6, 1949) ; *Ex parte Chin Shue Wee*, 272 Fed. 480 (D. Mass., 1921).

[6] 357 U.S. 185, 187 (1958).

missibility does not legally constitute an entry although the alien is physically within the United States.

It can thus be seen from the cases that the elements of the retention of custody and control over the alien seeking entry into the United States are determinative of the rights to exclude, without a hearing, as provided by law. Once such custody and control are lost, and the alien has effected an entry into the United States, irrespective of the legality of such entry, then the original jurisdiction to hold and exclude has been lost and thereafter the status of the alien must be determined in expulsion proceedings.

In the instant case, there is no doubt that the respondent is illegally in the United States. The case will be remanded for appropriate disposition in expulsion proceedings.

ORDER: It is ordered that the case be remanded for hearing in expulsion proceedings pursuant to section 242 of the Immigration and Nationality Act and for such further action as may appear appropriate.

**BEFORE THE BOARD**
(July 11, 1961)

DISCUSSION: The case comes forward on motion of the Assistant Commissioner, Investigations, Immigration and Naturalization Service, requesting the Board to reconsider and reverse its order of June 2, 1961, remanding the case for a hearing in expulsion proceedings pursuant to section 242 of the Immigration and Nationality Act and requesting that the order of the special inquiry officer terminating deportation proceedings be reinstated.

The facts are fully set forth in our prior order. Briefly, the record relates to a native and citizen of Greece, 33 years old, male, single, who last arrived in the United States at the port of New York on April 24, 1959, as a stowaway on the M/V *Alida Gorthon*. He was presented for inspection, was refused admission as a stowaway, and was ordered detained on board. However, he managed to escape about four or five hours later and was not served with an order to show cause in expulsion proceedings until March 24, 1961, almost two years later. By order dated April 6, 1961, the special inquiry officer concluded that jurisdiction did not lie under section 242 of the Immigration and Nationality Act in expulsion proceedings and that respondent was not entitled to such a hearing, but should be deported without a hearing pursuant to section 273(d) under the outstanding exclusion order; accordingly, the special inquiry officer terminated proceedings. The case was certified to the Board and on June 2, 1961, we concluded that the respondent should be given a hearing in expulsion proceedings pursuant to section 242 of the Immigration and Nationality Act.

359

The present motion repeats in large part the arguments which were advanced at oral argument and which were considered in our decision. As we previously stated, we do not quarrel with the cases holding that the parole of an excluded alien does not affect the status of the alien who is to be regarded as stopped at the border and who is regarded as not having entered the United States within the meaning of the immigration law; nor do we dispute that there is a distinction between exclusion and deportation proceedings. The motion attempts to equate the proceeding under section 273(d) with that set forth in section 252(b), but we feel that the provisions of law are not similar.

In our prior order we held that the elements of retention of custody and control over the alien seeking entry into the United States are determinative of the right to exclude without a hearing, as provided under the pertinent sections of law. However, after custody and control of the alien have been lost, and the alien has effected an entry into the United States, the original jurisdiction to hold and exclude has been lost and thereafter the status of the alien must be determined in expulsion proceedings.

We are fortified in this view by the decision of the court in the case of *In re Dubbiosi*, 191 F. Supp. 65 (E.D. Va., 1961). In that case the alien was a member of a crew who had been inspected and had been given a D-1 landing permit, but in connection with an investigation of stowaways had been placed under physical restraint on board the ship while the search for the stowaways was completed; the alien was implicated, and then taken off the vessel under guard, arrested, and placed in jail. The court held that while in a literal and physical sense the alien entered the United States when the ship reached the waters within the territorial limits of this country, actual clearance was not accomplished so long as the crewmen were detained pending formal disposition of their request for admission; that the present prevailing view with respect to *bona fide* crewmen is that freedom from official restraint must be coupled with physical presence before it can be said that the "entry" for immigration purposes has been accomplished; and that since the element of freedom from official restraint was lacking, the alien had not effected an entry into the United States and was properly the subject of exclusion proceedings.[1]

It is recognized that while the judicial authorities cited do not concern cases with the same or a similar factual situation such as is presented in the instant case, yet the language is material and applicable. It is not believed that the reference in the motion to section 101(g) has any relevancy to this case. However, it is be-

[1] *United States* v. *Vasilatos*, 209 F.2d 195 (C.A. 3, 1954); *United States* v. *Lazarescu*, 104 F. Supp. 771, affd. 199 F.2d 898 (C.A. 4, 1952).

360

lieved from a study of the cases cited in our prior order and in this order, that the distinction between exclusion and expulsion proceedings lies in whether an entry within the meaning of the immigration laws has been made. The cases indicate that unless such an entry has been made, unless there are present the elements of retention and custody control over the alien seeking entry into the United States, unless freedom from official restraint is coupled with physical presence in the United States, no entry has been accomplished and there is no right to an expulsion proceeding. Otherwise, the alien must be regarded as stopped at the border and not having made an entry and is properly the subject of exclusion proceedings and the restrictive provisions regarding an alien seeking admission into the United States, such as the summary provisions of section 252, section 254 and section 273, would apply. However, we believe that where an alien has effected an entry into the United States, although such entry is admittedly illegal, and has remained in this country for almost two years, he is properly the subject of expulsion proceedings.

**ORDER:** It is ordered that the motion be denied and that no change be made in our prior order of June 2, 1961.