MATTER OF YAM

In Deportation Proceedings

A–15950259

*Decided by Board May 30, 1978*

(1) An alien does not effect an entry into the United States unless, while free from actual or constructive restraint, he crosses into the territory of the United States and is inspected and admitted by an immigration officer, or actually or intentionally evades inspection at the nearest inspection point.

(2) An alien found floating in Niagara River, and brought by police while unconscious to a hospital in the United States where he was turned over to the Border Patrol, did not effect an entry.

(3) Deportation proceedings ordered terminated as to alien found in Niagara River and brought into the United States while unconscious, since exclusion was the proper procedure.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—At time of entry, within one or more classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who have been arrested and deported, consent to apply or reapply for admission not having been granted by the proper authority under section 212(a)(17) of the Act

ON BEHALF OF RESPONDENT:
Jules E. Coven, Esquire
Lebenkoff & Coven
One East 42nd Street
New York, New York 10017

ON BEHALF OF SERVICE:
George Masterton
Appellate Trial Attorney

BY: Maguire, Acting Chairman; Maniatis, Appleman, and Farb, Board Members

This case presents an appeal from a decision of the immigration judge on September 29, 1977, finding the respondent deportable and ordering his deportation to Hong Kong on the charge contained in the Order to Show Cause and the charge contained in the Additional Charges. The appeal will be sustained.

The respondent is a native and citizen of China, who last entered the United States in August 1977, allegedly without inspection by an immi-

535

gration officer. He had previously been deported from this country in 1965, 1969, and, following denial of his motion to reopen these proceedings in order to apply for withholding of deportation, again in June 1977. He failed to obtain permission from the proper authority last August to reapply for admission to this country after his third deportation two months earlier.

About nine or ten o'clock on the evening of August 23, 1977, two fishermen discovered the respondent floating after dark in the Niagara River, near Lewiston, New York. They pulled him into their boat about 100 feet off the American shoreline. One of the fishermen, Kenneth Dunkin, testified that he did not know the exact location of the International Boundary Line, but that the respondent was then unconscious (Tr. p. 7). The two fishermen radioed ashore for assistance and were met at the dock by the Lewiston Chief of Police, who likewise did not know the exact location of the International Border (Tr. p. 17). The latter testified that the respondent was then semiconscious and being administered oxygen. He followed the ambulance to Mount St. Mary's Hospital, calling en route for a Border Patrol Agent to meet him there because he was suspicious of an illegal entry (Tr. p. 14). The Chief of Police also testified that he took custody of a black garbage bag that the alien had in his possession when rescued (Tr. p. 12). It contained *inter alia* a Hong Kong passport, driver's licenses from New York and New Jersey, and a "multitude of pictures" (Tr. p. 13). The Police Chief and the Senior Inspector first interviewed the respondent after he had been x-rayed and treated in the hospital's emergency room. The respondent allegedly was given the *Miranda* warning by the Senior Inspector (Tr. pp. 16, 19).

The immigration judge, noting that the respondent refused to testify at the hearing on constitutional grounds, found that he was deportable on all the charges. In the absence of an application by counsel for any form of discretionary relief (Tr. p. 22), the immigration judge ordered that the respondent be deported to Hong Kong. The main thrust of counsel's contentions on appeal is that the respondent did not make an entry into the United States on August 23, 1977, and that the proper procedure herein should have been exclusion proceedings, rather than deportation proceedings.

In the unusual circumstances of this case, we find that counsel's reliance upon our decision in *Matter of Pierre*, 14 I. & N. Dec. 467 (BIA 1973) was well-placed since there is a strong similarity in the facts of both cases. An alien does not effect an entry into the United States unless, while free from actual or constructive restraint, he crosses into the territory of the United States and is inspected and admitted by an immigration officer, or actually or intentionally evades inspection at the nearest inspection point. See *Matter of Loulos*, Interim Decision 2533

(BIA 1976); *Matter of Pierre, supra,* and cases cited therein. Freedom from official restraint must be added to physical presence before entry is accomplished. See *United States* v. *Vasilatos,* 209 F.2d 195 (3 Cir. 1954); *United States* v. *Lazarescu,* 199 F.2d 898 (4 Cir. 1952). It can hardly be said that the respondent was free from official restraint when taken into custody since one witness testified that he was unconscious. Another witness stated that he was semiconscious and being administered oxygen. The respondent was in fact the victim of constructive restraint. Nor did the respondent consciously achieve physical presence within the geographical boundaries of the United States when he was the fortunate beneficiary of a humanitarian gesture by the two fishermen. The courts have also held, as pointed out at page 469 in *Pierre, supra,* that "no entry is made when the alien is taken into custody upon his arrival at an American port . . . ." See *Klapholz* v. *Esperdy,* 302 F.2d 928 (2 Cir. 1962), cert. denied 371 U.S. 891 (1962).

The respondent has shown a blatant disregard for our immigration laws over a long period of time. Nevertheless, his rights in this instance must be protected even though his true intention may have been to enter the United States surreptitiously. His unproven motive for being in the Niagara River in the "pitch dark" (Tr. p. 9), therefore, can have no bearing on the issue of his physical condition at the moment he was taken into custody. We find that the respondent did not make an "entry" into this country, within the purview of section 101(a)(13) of the Immigration and Nationality Act, as amended.

We agree with the contentions of counsel that these proceedings should have been held in exclusion. In view of the foregoing, we must conclude that the immigration judge was without jurisdiction to determine the issue of deportability. Accordingly, the appeal will be sustained and these proceedings ordered terminated.

ORDER: The deportation proceedings are terminated.