Interim Decision #2800

MATTER OF LEWISTON-QUEENSTON BRIDGE

In Fine Proceedings

BUF 10/50.39

*Decided by Board June 24, 1980*

(1) Section 271(a) of the Immigration and Nationality Act, 8 U.S.C. 1321(a), must be strictly construed because of its quasi–penal nature.

(2) The terms "landing" and "entry" are words of art and are not synonymous.

(3) An alien effects an "entry" only when physical presence in the United States is coupled with freedom from actual or constructive official restraint.

(4) The term "landing" encompasses a broader concept than that of "entry" and is ordinarily complete the moment physical presence occurs.

(5) When an individual comes to the United States by way of an international bridge, he has "landed" when he touches United States soil and if this landing is at a port of entry designated by the Attorney General, at a time and place designated by the Service, and the person submits to the inspection process, the bridge owner's responsibility under section 271(a) is satisfied.

(6) Fine proceedings ordered terminated where an alien crossed the Lewiston-Queenston Bridge, landed in Lewiston, New York, submitted to the inspection process, and then (without departing from the United States) effected an illegal "entry" after being denied lawful admission.

BASIS FOR FINE: Act of 1952—Section 271(a) [8 U.S.C. 1321(a)]

ON BEHALF OF CARRIER:
George A. Orr, Jr., Esquire
Orr, Brydges & Orr
426 Third Street
P.O. Box 248
Niagara Falls, New York 14302

ON BEHALF OF SERVICE:
George W. Masterton
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated March 8, 1978, the District Director determined that a fine of $1000 should be imposed under the provisions of section 271(a) of the Immigration and Nationality Act, 8 U.S.C. 1321(a), against the Niagara Falls Bridge Commission for its failure to prevent the unauthorized landing of an alien in the United States. The District

410

Director declined to remit or mitigate the fine to any extent. The Bridge Commission has appealed. The appeal will be sustained and the fine proceedings terminated.

The Niagara Falls Bridge Commission is a "body corporate and politic," which was created by a Joint Resolution of the Congress of the United States in 1938. It owns and operates, among others, the Lewiston-Queenston Bridge, an international bridge linking the Canadian port of entry at Queenston, Ontario, with the United States Class A port of entry at Lewiston, New York. The Commission leases space at the United States end of the bridge to the United States government for use as a customs and immigration facility, which is manned 24 hours a day.

The facts giving rise to the institution of fine proceedings are not in dispute. On September 26, 1977, an alien crossed the Lewiston-Queenston Bridge by automobile from Canada and presented himself to a United States immigration officer on duty at a primary inspection booth. He was referred to the secondary inspection area where he was inspected by an immigration officer and ultimately denied admission. After being given a "Notice of Refusal of Admission" (From I-160A), the alien was directed to return to Canada. Rather than comply with this instruction, however, the alien made a U-turn so he was facing away from Canada, rolled up his car's window, tore up the Form I-160A as immigration officers watched, and without ever leaving the United States illegally "entered" this country.[1]

A "Notice of Intention to Fine" (Form I-79) was served on the Bridge Commission in December 1977. It was alleged that the failure to prevent the unauthorized entry of the respondent into the United States in effect allowed him to land "at [a] time or place other than as designated by the immigration officers" and that liability for a fine, therefore, arose under section 271(a) of the Act. The Commission filed a written defense, submitting that it was not subject to a fine under the provisions of section 271(a) because the term "landing" was not synonymous with the term "entry." It was argued that the alien had in fact "landed" at a time and place designated by immigration officers when he submitted to inspection by Service officers at the authorized port of entry. The District Director, however, rejected the Commission's argument and ordered a $1000 fine imposed. The Commission appeals from this decision.

The relevant language of section 271(a), as regards liability for a fine

---

[1] The alien was apprehended that same day. The record indicates that he had been undergoing psychiatric treatment in Canada and on receipt of this information, the District Director authorized his voluntary departure to that country.

in this case, provides that:

> It shall be the duty of every person, including the owners...of...international bridges...providing a means for an alien to come to...the United States...to prevent the landing of such alien in the United States at a port of entry other than as designated by the Attorney General or at any time or place other than as designated by the immigration officers.

The sole issue now before the Board involves interpretation of the words "landing...at any time or place other than as designated by the immigration officers."

The Service submits that in the context of this section the term "landing" must be equated with the term "entry" and that if any alien enters the United States without inspection, after gaining access to the United States over an international bridge, liability results to the bridge owner. The Commission's attorney submits that the terms "landing" and "entry" cannot be interchanged. He argues that once an alien touches United States soil at a port of entry and reports for inspection at an authorized time and place he has in fact "landed" in compliance with requirements of section 271(a) and the bridge owner's liability is thereafter discharged.

We initially note that the statutory provision under consideration here must be strictly construed because of its quasi-penal nature. *See United States* v. *J.H. Winchester & Co.,* 40 F.2d 472, 474 (2 Cir. 1930); *Matter of M/V Signeborg,* 9 I&N Dec. 6 (BIA 1960); *Matter of D—,* 8 I&N Dec. 323 (BIA 1959). *See also Osaka Shosen Kaisha Line* v. *United States,* 300 U.S. 98, 101 (1937). Even without such a requirement, however, we could not accept the Service position that the term "landing" as used in section 271(a) is synonymous with the legal concept of "entry."

Both the terms "landing" and "entry" are words of art. An alien effects an "entry" only when physical presence is coupled with freedom from actual or constructive official restraint. *See United States* v. *Vasilatos,* 209 F.2d 195, 197 (3 Cir. 1954); *Niven* v. *United States,* 169 F. 782 (9 Cir. 1909); *Matter of Pierre,* 14 I&N Dec. 467, 468-69 (BIA 1973) and the cases cited therein. *See also* section 101(a)(13) of the Act. The term "landing," however, was originally used in the predecessor legislation to section 271(a) to refer to those aliens coming to the United States "by water."[2] A "landing" was complete "the moment the vessel [was] left and the shore...reached." *Taylor* v. *United States,* 207 U.S. 120, 125 (1907). *See also Matter of D—, supra,* at 324 (BIA 1959). Thus, the term "landing" has been viewed as a broader concept than that of

---

[2] *See* section 8 of the Immigration Act of March 3, 1891. *See also* section 18 of the Act of March 3, 1903; section 18 of the Act of February 20, 1907; and, section 10 of the Act of February 5, 1917.

"entry."[3] Once physical presence occurs, the landing is ordinarily complete.[4]

Accordingly, when an individual comes to this country by way of an international bridge, he has "landed" when he touches United States soil. If the individual lands at a port of entry designated by the Attorney General, at a time and place designated by the Service, and submits to the inspection process, we must conclude that the bridge owner's responsibility under the specific language of section 271(a) is satisfied. If the alien thereafter effects an illegal entry without having departed from the United States, we cannot find liability for a fine to arise under section 271(a).[5] As this was the case here, the Commission's appeal will be sustained and the fine proceedings ordered terminated. *Compare Matter of Southern Pacific Railroad Bridge*, 16 I&N Dec. 209 (BIA 1977) (where aliens landed at a time and place other than as designated by the Service).

ORDER: The appeal is sustained and the fine proceedings terminated.

---

[3] All who enter this country by way of vessels, aircraft, transportation lines or international bridges have of necessity "landed." The converse, however, need not be true (*i.e.*, not all who "land" may be allowed or able to effect an "entry"). For example, if a person were to jump ship and reach shore, but immediately be taken into Service custody, a "landing" would have occurred, but not an "entry." *See Matter of Pierre*, I&N Dec. 467 (BIA 1973).

[4] The Act provides an exception to this general definition of "landing" for those arriving by vessel or aircraft. Section 233(a), 8 U.S.C. 1223(a), provides in relevant part:

Upon the arrival at a port of the United States of any vessel or aircraft bringing aliens (including alien crewmen) the immigration officers may order a temporary removal of such aliens for examination and inspection at a designated time and place, but such temporary removal shall not be considered a landing, nor shall it relieve vessels or aircraft, the transportation lines, or the masters, commanding officers, agents, owners, or consignees of the vessel or aircraft upon which such aliens are brought to any port of the United States from any of the obligations which, in case such aliens remain on board, would, under the provisions of this Act bind such vessels or aircraft, transportation lines, masters, commanding officers, agents, owners, or consignees.

Thus, cases involving persons arriving by water or air who are allowed to disembark for the purpose of examination and inspection must be distinguished from cases involving persons arriving by land. With the former category of persons, the "landing" occurs only upon "entry." Therefore, if such persons enter illegally, the carrier will be liable for a fine. *See Matter of Northwest Airlines Aircraft, "Flight Number 4"*, 13 I&N Dec. 840 (BIA 1971); *Matter of Plane "NC-SJD-004"*, 5 I&N Dec. 482 (BIA 1953); *Matter of Plane "N-8224-H"*, 6 I&N Dec. 594 (BIA 1955). No provision similar to that in section 233(a), however, exists for persons arriving by land.

[5] The alien is subject to criminal prosecution under section 275 of the Act, 8 U.S.C. 1325, a criminal provision tied specifically to "entry" rather than "landing."