## MATTER OF CHING AND CHEN

In Exclusion Proceedings

A-26923928
A-26923929

*Decided by Board November 28, 1984*

Aliens who were refused admission and subsequently escaped from carrier custody while awaiting removal thereby "entered" the United States and so are subject only to deportation proceedings. *Matter of A-*, 9 I&N Dec. 356 (BIA 1961), followed. *Matter of Lin*, 18 I&N Dec. 219 (BIA 1982), distinguished.

EXCLUDABLE: Act of 1952—Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa (both applicants)

ON BEHALF OF APPLICANTS:
  Paul M. Douglass, Esquire
  David W. Chew, Esquire
  Douglass & Chew
  604 Myrtle Avenue
  El Paso, Texas 79901

ON BEHALF OF SERVICE:
  Guadalupe R. Gonzalez
  General Attorney

BY: Dunne, Acting Chairman; Maniatis, Morris, and Vacca, Board Members

The immigration judge, in a decision rendered August 10, 1984, found that the applicants are amenable only to deportation proceedings and therefore he ordered these exclusion proceedings terminated. The Immigration and Naturalization Service appeals. The appeal will be dismissed.

The applicants are a 22-year-old female and an 18-year-old male, natives and citizens of the People's Republic of China, each of whom also holds a valid Hong Kong identification card and a Taiwanese passport. They were among a group of five aliens traveling from Hong Kong to Guatemala via Tokyo and Los Angeles on a commercial airline. Upon arrival at Los Angeles International Airport on July 20, 1984, the carrier (airline) presented the group for inspection and admission under the transit without visa ("TRWOV") privilege. *See* 8 C.F.R. §§ 212.1(c)(1), 214.2(c)(1) (1984).

The examining immigration officer denied the five aliens entry as TRWOVs and issued to the carrier a Form I-259 (Notice to Detain, Deport, Remove, or Present Aliens), formally directing that they be detained by the carrier pending their removal on the carrier's next available return flight to Hong Kong. *See* 8 C.F.R. § 235.3(d) (1984). The aliens apparently made no attempt to obtain a further determination of their admissibility as TRWOVs at a continued or deferred inspection, or to pursue their applications for admission at an exclusion hearing before an immigration judge but agreed to abide by the examining immigration officer's decision and return to Hong Kong. They then apparently were kept in isolation in a waiting area or lounge within the airport until their final removal by the carrier could be effected. While in this carrier custody, the instant two applicants surreptitiously left the detention lounge and the Los Angeles International Airport, abandoning their passports, airline tickets, and baggage. Two days later they were apprehended on board an eastbound commercial bus at the border patrol check point at Sierra Blanca, Texas. The Service served each applicant with an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) and held them in custody at a Service detention facility. The Service later cancelled the Orders to Show Cause and instead issued to each applicant a Form I-122 (Notice to Applicant for Admission Detained for Hearing Before Immigration Judge) placing them in these exclusion proceedings.

The applicants argued before the immigration judge that the exclusion proceedings should be terminated because they properly were subject only to deportation proceedings in that they had succeeded in entering the United States without inspection. They asserted this result is consistent with a factually analogous case, *Matter of A–*, 9 I&N Dec. 356 (BIA 1961), where an alien stowaway detained on board a vessel awaiting removal who subsequently escaped from the carrier's custody, landed on shore, and remained in the country undetected for 2 years was held to have effected an "entry" and so was amenable only to deportation proceedings. The Service countered that this matter is controlled by *Matter of Lin*, 18 I&N Dec. 219 (BIA 1982), where an alien who absconded from a Service detention facility while awaiting an exclusion hearing did not make an entry into the United States and was properly placed in exclusion proceedings. The immigration judge agreed with the applicants and terminated the exclusion proceedings. This appeal by the Service followed.

Resolution of this case turns upon whether the applicants actually "entered" the United States and so are subject only to deportation proceedings. Section 101(a)(13) of the Immigration and Nation-

ality Act, 8 U.S.C. § 1101(a)(13) (1982), generally defines "entry" as "any coming of an alien into the United States from a foreign port or place or from an outlying possession." In *Matter of Pierre,* 14 I&N Dec. 467 (BIA 1973), we examined prior case precedent involving the entry issue and synthesized a three-part analysis, concluding that an entry involves (1) a crossing into the territorial limits of the United States, *i.e.,* physical presence; (2)(a) inspection and admission by an immigration officer or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint. *Id.* at 468 (citations omitted). Moreover, it is well settled that an alien's parole from Service custody into the United States does not constitute an entry and he is not entitled to deportation proceedings. Section 212(d)(5) of the Act, 8 U.S.C. § 1182(d)(5) (1982); *Leng May Ma* v. *Barber,* 357 U.S. 185 (1958); *Luk* v. *Rosenberg,* 409 F.2d 555 (9th Cir. 1969). Similarly, an alien detained by the Service, rather than granted parole, pending an exclusion hearing who escapes from custody does not enter the United States and remains subject to exclusion proceedings. *Matter of Lin, supra.*

Under the facts herein, we conclude that the applicants' escape from carrier custody into the United States constituted an entry. The applicants arrived by aircraft at Los Angeles International Airport and remained in the custody of the carrier before, during, and after completion of the inspection process. When they sought admission under the TRWOV privilege and were refused such status by the examining immigration officer, the applicants simply remained in the carrier's custody pending their return to Hong Kong. The applicants did not seek to further test their admissibility as TRWOVs but ostensibly accepted the immigration officer's refusal of admission and agreed to return home. It is clear that the inspection process was not to be ongoing or held in abeyance but that the applicants' inspection was completed and the determination of the immigration officer was final. Thus, this case is readily distinguishable from *Matter of Lin, supra,* where the alien absconded after being placed in exclusion proceedings and while awaiting a hearing before an immigration judge. Lin's processing for admission was not finalized but his application for admission was a continuing application throughout the exclusion proceedings. *See Matter of Kazemi,* 19 I&N Dec. 49 (BIA 1984). Here, by contrast, the applicants' inspection and application for admission were completed and they remained in the carrier's custody within the detention lounge without having actually "landed," *i.e.,* they were in a position legally equivalent to aliens "on the threshhold" and out-

side a United States land border.[1] In summary, the critical distinction between this case and *Lin* is that Lin was already in exclusion proceedings (following service of a Form I-122) and awaiting a formal hearing when he escaped, whereas here the applicants were not in exclusion proceedings pursuing a continuing application for admission, but their application and inspection were completed, the determination was final, and they were merely awaiting return transportation. In effect, the applicants made two separate attempts to enter the United States: their first failed when they were rejected for admission as TRWOVs; their second succeeded when they slipped away from the detention lounge, evading detection by either carrier or Service.

We agree with the applicants that their situation is legally analogous to that in *Matter of A-, supra*. There, the alien had been discovered on board a commercial ocean vessel as a stowaway before it arrived in port in the United States. Upon arrival, the alien was inspected by an immigration officer who determined the alien was a stowaway and refused him entry. *See* section 212(a)(18) of the Act. Accordingly, the carrier was ordered to detain the stowaway on board and remove him when the ship left port. *See* section 273(d) of the Act, 8 U.S.C. § 1323(d) (1982). Thus, formal disposition by the Service of the stowaway's application for admission was concluded. However, he later managed to escape from the ship and come ashore and was not apprehended in the United States until 2 years later. The Board held that the alien had entered without inspection and his removal could be enforced only through deportation proceedings. This is essentially what occurred in this case as well. Both here and in *Matter of A-*, the aliens, although physically present within this country's territorial jurisdiction, did not actually "land" in the United States. Their inspections and applications for admission were completed and a final determination was made refusing to admit them and ordering them removed, and they were detained by the carrier pending final removal, during which time they escaped and made their way into the United States. Therefore, consistent with *Matter of A-*, the instant applicants must be deemed to have entered the United States without inspection.

In conclusion, the applicants, who arrived by aircraft at a United States airport, were refused admission by the examining immigra-

---

[1] Federal regulations at 8 C.F.R. § 235.3(a) (1984) indicate that all persons arriving at a port in the United States by vessel or aircraft must remain in custody of the carrier at least until presented to an immigration officer for inspection and that persons in such carrier custody detained on board the vessel or "at the airport of arrival" have not "landed" in the United States. *See also* section 233(a) of the Act, 8 U.S.C. § 1223(a) (1982).

tion officer and acceded to that determination and his order that they be detained by the carrier pending removal on its next available return flight, and subsequently escaped from the carrier's custody, thereby "entered" the United States and so are amenable only to deportation proceedings. Accordingly, the immigration judge properly ordered these exclusion proceedings terminated.

**ORDER:** The appeal is dismissed.