993 F.2d 1537
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Seyoum Faisa JOSEPH; Yattie Joseph, Plaintiffs-Appellants,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Defendant-Appellee.
 No. 92-1641.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 2, 1993
Decided: May 20, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, District Judge. (CA-92-44-7-BR)
 Argued: Kenneth Bedford Hatcher, Wilmington, North Carolina, for Appellants.
 Stephen Aubrey West, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 On Brief: Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and WILLIAMS, Circuit Judges.
 WILLIAMS, Circuit Judge:
 
 
 1
 In this interlocutory appeal, Seyoum Faisa Joseph and Yattie Joseph challenge the district court's denial of a request for a preliminary injunction. The Josephs sought to stay Mr. Joseph's deportation until their applications for adjustment of his immigration status were adjudicated. The Josephs contend that Mr. Joseph"entered" the United States, entitling him to a deportation hearing, and that he should have been paroled into the United States. Because it is our conclusion that the Josephs are unlikely to succeed on either of these claims, we conclude that the district court did not abuse its discretion in denying the preliminary injunction, and affirm.
 
 I.
 
 2
 Mr. Joseph is a citizen and national of Ethiopia. He arrived in the United States at the port of Wilmington, North Carolina, on April 18, 1991. as a stowaway on a Norwegian vessel, the M/V Arcade Falcon. Mr. Joseph alleges that he fled incarceration and forced conscription by the Marxist government of Ethiopia. Upon arrival in the United States, Mr. Joseph asked for political asylum. The Immigration and Naturalization Service (INS) placed him in the custody of the Wilmington Shipping Company, the agent for the M/V Arcade Falcon, pending resolution of his claim for asylum. The specific order was a Form I-259 which stated that Mr. Joseph's transfer to the custody of Wilmington Shipping "does not constitute a landing in the USA and all provisions of Section 273(a) of the [Immigration and Nationality Act, 8 U.S.C. § 1101-1557(INA) ] remain in full force." (J.A. at 20.)
 
 
 3
 The Wilmington Shipping Company paid the maintenance expenses of Mr. Joseph pursuant to § 237(a)(1) of the INA, 8 U.S.C. § 1227(a)(1) (1988), until August 16, 1991. On August 16, 1991, the Shipping company wrote the INS that it did not believe it continued to be responsible for the maintenance of Mr. Joseph and informed the INS that it was returning him to the care and custody of the INS. (J.A. at 22.) After August 16, 1991, Mr. Joseph was on his own and received no maintenance from either the Shipping company or INS.
 
 
 4
 The INS denied Mr. Joseph's claim for asylum on August 21, 1991. He appealed this determination and requested oral argument before the Board of Immigration Appeals (BIA). In a written decision, the BIA dismissed Mr. Joseph's appeal on February 27, 1992, finding that he had not met the standard of eligibility for asylum or withholding of deportation. The BIA specifically noted that the Marxist government at whose hands Mr. Joseph allegedly suffered persecution was overthrown in May 1991, and that any fears about the present government were wholly speculative. On March 17, 1992, the INS issued a second Form I-259 directing the Wilmington Shipping Company to deport Mr. Joseph from the United States. This form again reiterated that the transfer of Mr. Joseph from Wilmington to a place where he could be deported "DOES NOT CONSTITUTE A LANDING IN THE UNITED STATES OF AMERICA." (J.A. at 24.)
 
 
 5
 Mr. Joseph married Yattie Joseph, a United States citizen, on March 27, 1992, after he had been ordered deported. The Josephs filed a Motion and Complaint in federal district court on April 1, 1992, requesting a preliminary and permanent injunction from deportation until their applications for adjustment of status could be adjudicated. The Josephs also requested a declaratory judgment that Mr. Joseph had "entered" and been "inspected and admitted" to the United States, as well as a writ of mandamus compelling the INS to parole him into the United States. The Josephs subsequently filed the forms for Mr. Joseph to become a lawful permanent resident on May 20, 1992.[1]
 
 
 6
 The district court initially granted a temporary restraining order against the deportation and then heard oral argument on whether the temporary restraining order should be converted into a preliminary injunction. The district court denied the request for a preliminary injunction by order dated April 29, 1992. The Josephs appeal this denial.[2]
 
 II.
 
 7
 In conducting our review of the denial of a preliminary injunction, we must examine whether the district court abused its discretion in applying the four-part balance of hardship test which governs the granting of injunctive relief in this circuit. The four factors considered are: (1) whether plaintiff will suffer irreparable injury if interim relief is denied; (2) the injury to the defendant if an injunction is issued; (3) the public interest; and (4) plaintiff's likelihood of success in the underlying dispute between the parties. Wetzel v. Edwards, 635 F.2d 283, 287 (4th Cir. 1980) (quoting North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749, 750 (4th Cir. 1979).
 
 
 8
 In applying these factors, the district court stated that the likelihood of injury to the Josephs was not that great, that the possibility of harm to the INS "washes out," that the public interest favors the enforcement of the immigration laws unless there is some showing that political or bodily harm will result, and that the Josephs had not shown any likelihood of success on the merits. (J.A. at 13-14.)
 
 
 9
 We agree with the district court's assessment that the balance of harms in this case appears to be evenly divided; therefore, our review will focus on Mr. Joseph's likelihood of success on the merits. See Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 808 (4th Cir. 1991) ("likelihood of success" factor assumes greater stature where the balance of harms is evenly divided).
 
 
 10
 Mr. Joseph contends that he has shown the likelihood of success on at least one of two substantive issues: (1) whether he has made an "entry" into the United States; and (2) whether the INS abused its discretion in not paroling him into the United States.[3] If Mr. Joseph is considered to have "entered" the United States, he is entitled to a deportation hearing and can petition to adjust his status without returning to Ethiopia.[4] In the alternative, if he has not "entered" the United States, the INS can parole him into the United States and this would also permit adjustment of his status without returning to Ethiopia. We will address the likelihood that Mr. Joseph will succeed on the merits of each of these issues.
 
 A. "Entry" into the United States
 
 11
 Mr. Joseph arrived in this country as a stowaway and therefore is classified under the INA as "excludable." 8 U.S.C.A. § 1182(a)(6)(D) (West Supp. 1993). Mr. Joseph nevertheless contends that he has effected an "entry" into the United States and therefore is entitled to a deportation hearing. "Entry" in the context of the INA is a term of art. 8 U.S.C § 1101(a)(13) (1988). Physical presence alone is not sufficient to constitute an "entry." Rather, in order to establish an "entry" into the United States, an alien must show: (1) physical presence in the United States; (2)(a) inspection and admission by an immigration officer, United States v. Vasilatos, 209 F.2d 195, 197 (3rd Cir. 1954), Lazarescu v. United States, 199 F.2d 898, 900 (4th Cir. 1952), or (b) actual and intentional evasion of inspection, United States ex rel. Giacone v. Corsi, 64 F.2d 18, 19 (2d Cir. 1933), Matter of EstradaBetancourt, 12 I. & N. Dec. 191, 193-94 (B.I.A. 1967); and (3) freedom from official restraint, Vasilatos, 209 F.2d at 197, Lazarescu, 199 F.2d at 900. See also Matter of Pierre, 14 I. & N. Dec. 467, 468 (B.I.A. 1973) (detailing three prong test).
 
 
 12
 Mr. Joseph has clearly shown that he was physically present in the United States. He also argues that when the Wilmington Shipping Company terminated its maintenance of him he was free from official restraint. Even if Mr. Joseph was free from official restraint after August 16, 1991, his contention misses a fundamental criterion for an "entry" into the United States, namely whether he has been inspected and admitted. Mr. Joseph is not likely to succeed in his claim that he has "entered" the United States because he cannot establish either that he was inspected and admitted by an immigration officer or that he actually and intentionally evaded inspection.
 
 
 13
 Mr. Joseph's situation is similar to that presented in Matter of Lin, 18 I. & N. Dec. 219 (B.I.A. 1982). In Matter of Lin, the applicant was a native and citizen of China who applied for admission as a nonimmigrant visitor using a passport bearing the name of another person which he had purchased in Hong Kong. Under formers 212(a)(19) and (20) of the INA, 8 U.S.C. § 1182(a)(19) and (20) (1988) (now codified at 8 U.S.C.A. § 1182(a)(6)(C)(i) (West Supp. 1993)), an alien is excludable if he attempts entry by fraud or misrepresentation. Lin was detained by the INS and placed in exclusion proceedings because of his alleged fraud and misrepresentation in the admission process. 18 I. & N. Dec. at 220. Lin subsequently absconded from INS detention prior to the exclusion hearing and remained free from restraint for two days. Id. The primary question presented in Matter of Lin was whether Lin was entitled to a deportation hearing, rather than an exclusion hearing, because he had "entered" the United States.
 
 
 14
 The BIA, applying the reasoning of Matter of A-, 9 I. & N. Dec. 356 (B.I.A. 1961), initially held that Lin had entered the United States because he temporarily achieved freedom from INS restraint and had made an entry. 18 I. & N. Dec. at 220. On reconsideration, the BIA held that Lin did not effect an entry because he had not evaded inspection, but was inspected and detained pending exclusion proceedings. Id. at 221. In support of this conclusion, the BIA relied on Siu Fung Luk v. Rosenberg, 409 F.2d 555 (9th Cir.), cert. dismissed, 396 U.S. 801 (1969), where an alien had been found excludable, paroled into the country and then absconded for three years. After the alien was located, his parole was revoked. 409 F.2d at 556. The Ninth Circuit held that the alien did not make an "entry" when his parole was revoked because Congress did not intend such aliens to be in a better position than an applicant seeking admission who has not "entered" the country and is not entitled to deportation proceedings. Id. at 558.
 
 
 15
 On reconsideration of Lin's case, the BIA also distinguished Matter of A-, 9 I. & N. Dec. 356 (B.I.A. 1961). In Matter of A-, an alien detained on a ship as a stowaway pursuant tos 273(d) of the INA, 8 U.S.C.A. § 1323(d) (West Supp. 1993), escaped and managed to get to land. Matter of A-, 9 I. & N. Dec. at 356. The BIA considered the alien in Matter of A- to have made an "entry," because his status was similar to an alien who surreptitiously crosses the border and evades inspection. Id. at 358. In contrast, the BIA held that Lin had not evaded inspection but had been inspected and not admitted. Matter of Lin, 18 I. & N. Dec. at 222. The BIA analogized his situation to that of an alien paroled into the United States pending exclusion proceedings, who does not gain the additional protections prescribed for deportation hearings. Id. See Leng May Ma v. Barber, 357 U.S. 185, 190 (1958) (aliens who are temporarily paroled into the United States have not "entered" and are not entitled to deportation hearings). According to the BIA, an alien who has been placed in detention pending exclusion should be treated the same as an alien who is paroled pending exclusion proceedings: neither are deemed to have "entered" the United States. Matter of Lin, 18 I. & N. Dec. at 222.
 
 
 16
 Mr. Joseph argues that his situation is like that presented in Matter of Ching and Chen, 19 I. & N. Dec. 203 (B.I.A. 1984), rather than Matter of Lin. In Matter of Ching, two aliens, Ching and Chen, were traveling from China and presented themselves for inspection and admission under the transit without visa (TRWOV) privilege, 8 C.F.R. § 214.2(c)(1) (1992). 19 I. & N. Dec. at 203. The INS officer denied their request for TRWOVs and directed that Ching and Chen be detained by the airline carrier pending removal on the next available return flight. Id. at 204. Ching and Chen made no attempt to obtain further determination of their admissibility, and were kept in a waiting area of the airport until their removal could be effected. Id. While in such custody, Ching and Chen covertly left the waiting area, abandoning their passports, airline tickets, and baggage. Id.
 
 
 17
 After Ching and Chen were apprehended two days later, they argued, relying on Matter of A-, that they were subject to deportation hearings rather than exclusion hearings because they had entered the United States without inspection. Id. The BIA held that Ching and Chen's escape from custody constituted an entry. Id. at 205. According to the BIA, the critical distinction between Ching and Chen's situation and Matter of Lin was that Lin was awaiting a formal exclusion hearing when he escaped, whereas Ching and Chin's application and inspection were completed and a final determination regarding their admissibility had been made. Id. at 206. Essentially, the BIA treated Ching and Chen as having made two separate attempts to enter the United States. The first failed when they were denied admission; the second succeeded when they escaped from detention. The BIA concluded that this second entry attempt was sufficiently similar to an actual and intentional evasion of inspection while free from official restraint, which constitutes an "entry." Id.
 
 
 18
 Both Matter of Lin and Matter of Ching involved aliens who were in the United States and free from official restraint. Lin did not "enter" the United States because he escaped from custody while his exclusion proceedings were pending and he could not show either that he had been admitted, or that he intentionally evaded inspection. Ching and Chen did "enter" the United States, even though they were initially inspected and denied admission, because their custody ended after a final determination of admissibility had been made and in such a manner as to constitute an actual and intentional evasion of inspection. Mr. Joseph was inspected by the INS upon his arrival as a stowaway, but he was never admitted into the United States. He also did not intentionally or surreptitiously evade inspection. Instead, he was ordered detained by the shipping company pending resolution of his asylum claim. The question of his admissibility to the United States was never conclusively determined until his appeal was denied on February 27, 1992, so his situation is not analogous to that in Matter of Ching. Moreover, the forms which were used to transfer Mr. Joseph to the custody of the shipping company and to order his deportation specifically stated that he was not considered even to have "landed"[5] in the United States. Thus, Mr. Joseph's immigration status was as if he continued to be physically detained at the border.
 
 
 19
 Because Mr. Joseph was neither formally admitted into the United States nor intentionally evaded inspection, it follows that he never "entered" the United States. The refusal to enjoin his deportation was therefore appropriate.
 
 B. Denial of Parole
 
 20
 Mr. Joseph argues, in the alternative, that if he is not deemed to have "entered" the United States, it was an abuse of discretion for the INS to deny him parole into the United States. If Mr. Joseph is paroled into the United States, he is not required to return to Ethiopia to obtain a visa and he can stay in the United States while his I-485 petition to adjust his status is processed.
 
 
 21
 Under § 212(d)(5)(a) of the INA, 8 U.S.C.A.s 1182(d)(5)(a) (West Supp. 1993), the INS has the discretion to "parole into the United States temporarily ... for reasons deemed strictly in the public interest any alien applying for admission into the United States." This discretion is extremely broad: our review is limited to determining whether the INS in fact exercised its discretion and whether its exercise of discretion was "on the basis of a facially legitimate and bona fide reason." Bertrand v. Sava, 684 F.2d 204, 212 (2d Cir. 1982) (quoting Kleindienst v. Mandel, 408 U.S. 753, 770 (1972)).
 
 
 22
 Mr. Joseph relies on 8 C.F.R. § 212.5(a)(2)(iii) (1992) to support his position that the INS abused its discretion in denying his parole. Section 212.5(a)(2)(iii) states that parole is "strictly in the public interest" for aliens who have close family relatives (e.g. a spouse or children) in the United States. Mr. Joseph argues that his parole into the United States is in the public interest because his spouse resides here and has filed a visa petition on his behalf. According to Mr. Joseph, the ties that he has developed in the United States since his arrival make the INS's refusal to parole him into the United States an abuse of discretion. We disagree.
 
 
 23
 Mr. Joseph wants to be paroled so he can remain in the United States while his petition to adjust his status is processed. Under the INA, adjustment of status is a privilege for aliens physically present in the United States and under § 245(a) of the INA, 8 U.S.C. § 1255(a) (1988), it is only available for aliens who have been inspected and admitted or paroled into the United States. Section 245(a) is not applicable to aliens who are not in legal immigration status at the time of the filing of the adjustment petition, therefore adjustment of status is not available to aliens who enter the United States illegally as stowaways. In addition, aliens who marry United States citizens while exclusion or deportation proceedings are pending are generally statutorily ineligible for adjustment of status. INA § 245(e), 8 U.S.C.A. § 1255(e) (West Supp. 1993). As we interpret § 212.5(a)(2)(iii), parole is only strictly in the public interest for aliens who either have relatives in the United States before they arrive here, or who develop family ties while legally present in the United States. We do not construe § 212.5 as creating a public interest in paroling stowaways into the United States, particularly stowaways who marry United States citizens after their asylum requests have been denied and after a deportation order has issued. INA § 212(a)(6)(D), 8 U.S.C.A. § 1182(a)(6)(D).
 
 
 24
 There are bona fide and legitimate reasons for denying Mr. Joseph's request for parole. Because he is not likely to succeed in his challenge to the exercise of discretion in denying him parole, the request for preliminary injunction was properly refused.
 
 III.
 
 25
 For the foregoing reasons, we affirm the district court's denial of a preliminary injunction to halt Mr. Joseph's deportation.
 
 AFFIRMED
 
 
 [1]
 The process by which an alien spouse of a United States citizen acquires lawful permanent status involves the citizen's petition on Form I-130 and the alien's application to adjust status on Form I-485
 
 
 [2]
 Without the preliminary injunction, the order deporting Mr. Joseph to Ethiopia will be carried out and his claims will be moot
 
 
 [3]
 The Josephs make several other contentions, including an allegation that the INS violated Mrs. Joseph's constitutional rights by not granting parole to her husband. We find these claims to be without merit
 
 
 [4]
 Aliens seeking admission to the United States must prove that they are admissible and do not fall within any of the nine classes of excludable aliens adopted by Congress in § 212(a) of the INA, 8 U.S.C.A. § 1182(a) (West Supp. 1993). Once an "entry" has been made, however, the alien cannot be subjected to expulsion solely on the basis of the grounds for exclusion. Instead, his status must be adjudicated in a deportation proceeding and he is entitled to the full procedural protections available to all persons in the United States
 
 
 [5]
 See In re Lewiston-Queenston Bridge, 17 I & N Dec. 410, 412-13 (BIA 1980) (The term "landing" is a broader concept than that of an "entry." "Entry" requires physical presence plus freedom from actual or constructive official restraint, whereas a "landing" is ordinarily complete when physical presence occurs.)