MATTER OF PIERRE et al.

In Exclusion Proceedings

A-20182758-763

*Decided by Board October 5, 1973*

(1) An alien has not effected an entry into the United States unless, while free from actual or constructive restraint, he has crossed into the territorial limits of the United States and has been inspected and admitted by an immigration officer or has actually and intentionally evaded inspection at the nearest inspection point.

(2) Respondents, Haitian refugees, who, upon arrival at the port of West Palm Beach, Florida, remained on board their vessel awaiting inspection by immigration officers but who were not admitted by such officers, did not make an entry into the United States. Consequently, exclusion proceedings are proper in their cases and relief under section 243(h) of the Immigration and Nationality Act, as amended, is, therefore, unavailable to them.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrants—no visas.

ON BEHALF OF APPLICANTS:
Donald I. Bierman, Esquire
Bierman & Sonnett, P.A.
600 Roberts Building
28 West Flagler Street
Miami, Florida 33130

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The aliens, hereafter referred to as "applicant," appeal from the May 24, 1973 decision of the immigration judge in which he found them excludable under section 212(a)(20) of the Immigration and Nationality Act, and refused to hear their claims of persecution under section 243(h) of the Act. The appeal will be dismissed.

The principal question to be decided is whether these cases are properly in exclusion rather than deportation proceedings. The applicants are all natives and citizens of Haiti. They left Haiti in a small boat, which fell into distress and was towed into West Palm Beach, Florida, a designated port of entry, 8 CFR 100.4(c)(2) by an American vessel on May 20, 1973. Upon being questioned, they informed the captain of the American vessel that they had no entry documents. Then they waited on board for the arrival of

467

immigration officers in the hope of being allowed to remain in the United States as political refugees. Because they did not appear to the immigration officers to be clearly and beyond a doubt entitled to land, the matter was referred to the immigration judge for further inquiry in accordance with section 235(b) of the Act. The applicants were held in custody until June 15, 1973, when they were paroled in the custody of a group of ministers. Their applications for political asylum were denied by the District Director after he had consulted with the Office of Refugee and Migration Affairs of the Department of State.

The applicants contend thay they should be heard in deportation (i.e. expulsion) rather than exclusion proceedings. Therefore, the key question is whether or not an entry was made, since it is clear that they did not effect an "entry" into this country, exclusion proceedings were proper, whereas the proceedings must be in deportation if the aliens made an "entry."

Section 291 of the Immigration and Nationality Act provides that any person who applies for admission to the United States must establish that he is not subject to exclusion. An alien who has effected an entry is not subject to exclusion, but rather to deportation. Section 291 further provides that in deportation proceedings the respondent must bear the burden of showing the time, place, and manner of his entry into the United States. It follows, therefore, that the responsibility for establishing whether an entry has been made rests on the alien.

The courts have found it necessary to interpret the term "entry," which is now defined in section 101(a)(13) of the Act as "...any coming of an alien into the United States, from a foreign port or place or from an outlying possession...." A survey of the many cases which have treated this subject over the years leads to the following conclusion: An "entry" involves (1) a crossing into the territorial limits of the United States, i.e. physical presence; plus (2) inspection and admission by an immigration officer, *United States v. Vasilatos*, 209 F.2d 195 (C.A. 3, 1954); *Lazarescu v. United States*, 199 F.2d 898, 900 (C.A. 4, 1952); *or* (3) actual and intentional evasion of inspection at the nearest inspection point, *U.S. ex rel. Giacone v. Corsi*, 64 F.2d 18 (C.A. 2, 1933); *Morini v. United States*, 21 F.2d 1004 (C.A. 9, 1927), cert. den. 276 U.S. 623 (1928); *Lew Moy v. United States*, 237 Fed. 50, 52 (C.A. 8, 1916); *Matter of Estrada-Betancourt*, 12 I. & N. Dec. 191, 193-4 (BIA 1967); *Matter of Albuerne-Urquiza*, A17 334 264, unreported decision (BIA October 12, 1967); *coupled with* (4) freedom from restraint, *United States v. Vasilatos*, supra; *Lazarescu v. United States*, supra. In all of the above cases these conditions were satisfied and an entry was effected.

468

In contrast, the courts have held that no entry is made when the alien is taken into custody upon his arrival at an American port (even though he may possess a valid immigrant visa), *Klapholz v. Esperdy*, 302 F.2d 928, 929 (C.A. 2), cert. den. 371 U.S. 891 (1962). There is no entry when the alien is under official restraint, even after his ship has arrived at port and he has been inspected and given a conditional landing permit, *In re Dubbiosi*, 191 F. Supp. 65, 66 (E.D. Va. 1961). The restraint may take the form of surveillance, unbeknownst to the alien; he has still not made an entry despite having crossed the border with the intention of evading inspection, because he lacks the freedom to go at large and mix with the population, *Ex parte Chow Chok*, 161 Fed. 627, 629–30, 632 (N.D.N.Y.), aff'd 163 Fed. 1021 (C.A. 2, 1908).

Parole is not an admission, section 212(d)(5), Immigration and Nationality Act, and therefore does not constitute an entry, *Leng May Ma v. Barber*, 357 U.S. 185, 186, 188–90 (1958); *Vitale v. INS*, 463 F.2d 579, 582 (C.A. 7, 1972); *Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 558 (C.A. 9), cert. denied 396 U.S. 801 (1969); *U.S. ex rel. Tom We Shung v. Murff*, 176 F. Supp. 253, 256 (S.D.N.Y. 1959), aff'd 247 F.2d 667 (C.A. 2, 1960). Moreover, when an alien crosses the border, intends to present himself for inspection, and follows the ordinary path from the international line to the nearest inspection point, he has not effected an entry, *Thack v. Zurbrick*, 51 F.2d 634, 635–36 (C.A. 6, 1931). *A fortiori* an entry is not made when an alien merely crosses into the territorial waters of the United States without landing and without evading inspection.

In the present case, the aliens arrived at port but did not land. Instead, they waited on board their vessel until they could be inspected by immigration officers. While they may have crossed into the territorial limits of the United States, they were not admitted by immigration officers, nor did they intentionally evade inspection. On the contrary, they requested inspection (Tr. P. 12). The captain of the American vessel has no authority to admit them. Indeed, he would have been subject to penalties if he had permitted them to land, sections 271 and 273, Immigration and Nationality Act.

Counsel relies heavily on *Matter of Estrada-Betancourt, supra*, in which we found that an entry had been made and that, therefore, deportation proceedings rather than exclusion proceedings were proper. The aliens in that case did not arrive at a "designated port of entry." We stated that they "were required to proceed by the ordinary route to the nearest such port for their inspection," and held that "when they evaded inspection at that place their 'entry' was effected and they were thereafter properly the subject of expulsion proceedings for having 'entered without inspection,'" id.

at 194. That the applicants in the present case remained on board and waited for the immigration inspectors to come to them does not alter the fact that they did not evade or seek to evade inspection at the nearest inspection point.

Accordingly, we find that the applicants have not sustained their burden of establishing that an entry was made. In *Beauvil* v. *Ahrens*, 333 F.2d 307 (C.A. 5, 1964), on substantially similar facts, the United States Court of Appeals held that exclusion proceedings were proper.[1] Consequently, we agree with the immigration judge that the proceedings are properly in exclusion, not in deportation.

Since these are exclusion proceedings, the immigration judge correctly refused to hear the applicants' claims of persecution under section 243(h) of the Act. That provision by its terms applies to aliens "within the United States" and not to those who, like the applicants, seek admission. Section 243(h) relief is thus unavailable to applicants in exclusion proceedings, *Leng May Ma* v. *Barber*, *supra* at 186; *U.S. ex rel. Tom We Shung* v. *Murff*, *supra* at 260.

Applicants for admission and excluded aliens have the alternative remedy of presenting evidence concerning feared persecution to the District Director and requesting parole pursuant to section 212(d)(5) and 8 CFR 212.5(a). Cf. *Glavic* v. *Beechie*, 225 F. Supp. 24, 27 (S.D. Tex. 1963), aff'd 340 F.2d 91 (C.A. 5, 1964) (where a crewman has the opportunity to seek parole under section 212(d)(5), a hearing under section 243(h) is not required by the Act). The applicants have availed themselves of this opportunity, but the District Director denied their requests for political asylum after consultation with the Office of Refugee and Migration Affairs, Department of State. Neither the immigration judge nor this Board is empowered to grant parole pursuant to section 212(d)(5) of the Act, *Matter of Conceiro*, Interim Decision No. 2183 (BIA 1973), aff'd *Conceiro* v. *Marks*, 360 F. Supp. 454 (S.D.N.Y. 1973).

The applicants claim that not to allow them to be heard in deportation proceedings is a violation of due process under the Fifth Amendment of the United States Constitution. Similarly, they assert that it is a violation of their rights to due process and equal protection of the laws under the Fifth and Fourteenth Amendments for the immigration judge to refuse to hear their persecution claims. They insist further that their exclusion and subsequent deportation to Haiti would constitute cruel and unusual punishment, and would violate their rights under the Eighth

---

[1] The facts in the *Beauvil* case are fully set forth in the unreported Board decision, *Matter of Haitian Refugees*, A13 322 344–57, 59–68 (BIA, December 3, 1963).

Amendment of the United States Constitution. These claims were advanced in order to preserve them in the event that appeal to the courts should become necessary. The applicants acknowledge that it is not within the province of this Board to pass upon the constitutionality of the statutes we administer, *Matter of L—*, 4 I. & N. Dec. 556, 557 (BIA 1951).

Congress has provided that a hearing be given to those whose right to enter is in dispute, sections 235(b) and 236, Immigration and Nationality Act. We have determined that the hearing held before the immigration judge in the present case was fairly conducted. We agree with the decision of the immigration judge that the proceedings were properly in exclusion, and that he was therefore without jurisdiction to hear the persecution claims under section 243(h).

Counsel has requested that the case be certified to the Attorney General pursuant to 8 CFR 3.1(h). We see no reason for certification and therefore deny counsel's request.

**ORDER:** The appeal is dismissed.