## MATTER OF BARRETO

### In Exclusion Proceedings

### A–20648543

*Decided by Board November 3, 1975*

Where, a short time after applicant was preinspected by an immigration officer at Toronto, Canada and an admission stamp placed on her immigrant visa and in her passport, the officer returned and cancelled both admission stamps and instructed her to report to the Chicago Office of the Service upon arrival in the United States, following which exclusion proceedings were instituted, the determination of her admissibility in exclusion proceedings, rather than deportation proceedings, was proper since applicant had not achieved physical presence within the geographical boundaries of the United States at the time the admission stamps were cancelled and, thus, had not made an "entry" within the meaning of section 101(a)(13) of the Immigration and Nationality Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of valid immigrant visa.

ON BEHALF OF APPLICANT:
Ralph M. Schelly, Esquire
100 N. LaSalle Street
Chicago, Illinois 60602

ON BEHALF OF SERVICE:
Paul C. Vincent
Chief Trial Attorney

This case presents a Service appeal from an order of an immigration judge terminating these exclusion proceedings. The appeal will be sustained and the applicant will be ordered excluded and deported from the United States.

The applicant is a 29-year-old married female alien, native and citizen of Mexico, who last sought admission to the United States at Chicago, Illinois on March 4, 1974 following a preflight inspection at Toronto, Canada on the same date. Final inspection was deferred, and on April 5, 1974 the applicant received notice that she was being held in exclusion proceedings on the ground that her immigrant visa was allegedly obtained on the basis of a marriage to a United States citizen which was not bona fide for immigration purposes (Exh. 1).

The pertinent facts as they were adduced at the hearing are not in dispute and can be summarized as follows: The applicant presented herself to an immigration officer in Toronto, Canada for inspection on March 4, 1974 in possession of an immigrant visa issued by the United

498

States consul in Toronto on that date. The applicant's Mexican passport (Exh. 7) and immigrant visa (Exh. 2) were initially stamped for her admission to the United States as a class "IR-1" (immediate relative, spouse) immigrant and she was instructed to be seated in a waiting area for her anticipated departure flight to Chicago.[1] A short time later the immigration inspector, who had retained the applicant's immigrant visa, returned to the waiting area, took her passport back, and told her to wait. At this point the inspector told the applicant that she should report to the Chicago office of the Immigration and Naturalization Service on the next day. The record indicates that in the intervening time the inspector had become suspicious of the validity of the marriage on which the applicant's visa was based, had crossed out the admission stamps in her passport and visa with an "X" and had inscribed the notation "stamped in error" next to both stamps (Exh. 2 & 7). Following her arrival in the United States the applicant was placed in these exclusion proceedings.

At the hearing counsel moved to terminate on the grounds that the act of the immigration inspector in placing the admission stamps in the applicant's visa and passport and instructing her to await her flight to the United States constituted an admission of the applicant into the United States. Counsel maintains that the mere crossing out of the admission stamps was ineffective to revoke them and that the applicant's right to be in the United States may thus only be questioned in deportation, rather than exclusion, proceedings.

The immigration judge, in reliance on our decision in *Matter of V–Q–*, 9 I. & N. Dec. 78 (BIA 1960), accepted counsel's contention and ordered the proceedings terminated. We find *Matter of V–Q–*, supra, to be distinguishable and must reverse the immigration judge's decision.

*Matter of V–Q–*, supra, involved a female alien who sought admission as a returning resident at a pedestrian inspection point located in El Paso, Texas. She produced her alien registration receipt card (Form I–151) and was told to "go ahead," or words to that effect. In the next instant a bystander indentified her as an alleged prostitute, whereupon the admitting immigration officer sought to recall her for further inspection. At that point the alien had proceeded some 75 or 100 feet beyond

the check point before the officer succeeded in taking her into custody. Further questioning followed and she was subsequently subjected to exclusion proceedings. On appeal this Board held that the original jurisdiction to hold and exclude an applicant for admission depends upon the custody of his person acquired at the time of his arrival, and this jurisdiction continues until the question of his right to be admitted is determined in his favor, at which point the proceedings before the examining immigration officer must be considered closed, *Matter of V–Q–*, supra. Thus, in *V–Q–'s* case, jurisdiction to examine her as an applicant for admission ceased when the immigration inspector communicated his finding of admissibility to her by telling her to "go ahead." At that point her "admission" had been accomplished and the alien could not be recalled for questioning within the exclusion process. Her right to remain in the United States could properly be determined only in deportation proceedings, *Matter of V–Q–*, supra.

The crucial distinction between *Matter of V–Q–*, supra, and the present case lies in the fact that here the alien was recalled while still on foreign soil, owing to the peculiar mechanism of "preflight inspection," whereas *V–Q–* had actually crossed into the territorial limits of the United States when the immigration inspector sought to recall her.[2] In *Matter of Pierre*, 14 I. & N. Dec. 467 (BIA 1973), we surveyed the cases which have interpreted the term "entry," as defined in section 101(a)(13) of the Immigration and Nationality Act.[3] We concluded that, for an "entry," there had to be (1) a crossing into the territorial limits of the United States, free from restraint, and (2) inspection and admission by an immigration officer, or (3) actual and intentional evasion of inspection at the nearest inspection point.

This applicant was inspected by an immigration officer, and an admission stamp was placed on her visa and in her passport. However, the applicant had not achieved physical presence within the geographical boundaries of the United States, at the time when those admission stamps were cancelled.[4] Thus, she had not made an "entry" into the United States, and was properly placed in exclusion proceedings when her admissibility was questioned.

Looking at the regulation which authorizes preflight inspection procedures, 8 CFR 235.5(b) (see footnote 1), we find nothing that is inconsistent with our position. This provision states that ". . . the examination and inspection. . . required by the act and final determina-

---

[2] See 8 CFR 235(b), which is set forth in footnote 1.

[3] Section 101(a)(13) of the Immigration and Nationality Act provides, generally, that the term "entry" means "any coming of an alien into the United States, from a foreign port or place or from an outlying possession. . . ." subject to certain exceptions.

[4] Because of the applicant's lack of physical presence within the United States, the question of "freedom from restraint" was not involved.

tion of admissibility may be made. . . prior to. . . departure at the port or place in foreign contiguous territory. . . ." "Final determination of admissibility" is not the equivalent of an "entry." The "final determination of admissibility" in the preflight inspection process does not ripen into an "entry" until the alien *physically* enters the United States, *Matter of Pierre*, supra, and *Matter of V–Q–*, supra.

Having therefore found the applicant to be properly in exclusion proceedings, we must turn to the question of her excludability on the ground alleged under section 212(a)(20) of the Act. We are persuaded that the applicant's own testimony establishes that the marriage on which her immediate relative immigrant visa is based is not bona fide for immigration purposes, since she admitted never having lived with her husband, never having consumated the marriage, and not even having seen or heard from him for a long period (Tr., p. 32). She stated that she is living in a husband and wife relationship with another man, who is the father of her child (Tr., p. 32). The applicant's immigrant visa is thus invalid and she is inadmissible under section 212(a)(20) of the Act. The decision of the immigration judge will be reversed and the following order will be entered.

ORDER: The Service appeal is sustained and the applicant is hereby ordered excluded and deported from the United States.