UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan GONZALEZ–TORRES,
Defendant–Appellant.

No. 00–50543.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2001.

Filed Oct. 28, 2002.

Benjamin L. Coleman, Federal Defenders of San Diego, San Diego, CA, and Shaun Khojayan, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (at time of argument), Carol C. Lam, United States Attorney (when opinion was filed), Roger W. Haines, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before RYMER and RAWLINSON, Circuit Judges, and POGUE,\* Judge.

## ORDER AND OPINION

RAWLINSON, Circuit Judge.

### ORDER

The Opinion filed on December 11, 2001, appearing at 273 F.3d 1181, is withdrawn and replaced with the attached opinion.

---

\* The Honorable Donald C. Pogue, Judge, Court of International Trade, sitting by designation.

## OPINION

Juan Gonzalez–Torres ("Torres") was convicted by a jury of entering the United States in violation of 8 U.S.C. § 1325, being a deported alien "found in" the United States in violation of 8 U.S.C. § 1326, and smuggling aliens in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). The district court erred by finding Torres was not under official restraint. Accordingly, we reverse the convictions based on violations of §§ 1325 and 1326.

## BACKGROUND AND PROCEEDINGS

On March 1, 2000, Border Patrol Agent Todd Watkins ("Agent Watkins") observed, through his binoculars, a group of suspected aliens enter the United States from the Mexican border. Agent Watkins was not in position to intercept the group, so he sent a radio message to agents in the area. Border Patrol Agent Jari Karttunen ("Agent Karttunen") received the message, saw the suspects, and began pursuing them. Although he lost sight of them for moments at a time, Agent Watkins observed the suspects continuously. He knew the trail well and was able to visually follow them until they were intercepted.

As he watched the suspects, Agent Watkins noticed that one of the individuals appeared to lead the group. Agent Karttunen also observed this. The leader, identified in court by Agent Karttunen as defendant Torres, was making hand gestures and telling the others when to sit and where to walk. As the group of suspects was near apprehension, Torres attempted to escape, but was unsuccessful. When the Immigration and Naturalization Service ("INS") attempted to identify the suspects through their fingerprints, the

plaintiff-appellee.

agents discovered that Torres, who used an alias, had also defaced his index finger, apparently in an effort to frustrate attempts to identify him.

Torres was tried before a jury, and at the close of the Government's case, brought a motion for acquittal under Rule 29 as to all counts. The district court denied the motion. After the motion for acquittal was denied, both sides submitted proposed jury instructions on the official restraint doctrine. The district court adopted the Government's proposed instruction over Torres' objection. The jury returned guilty verdicts as to all counts.

At the sentencing hearing, the district court found, over Torres' objection, that Torres was subject to a five year mandatory minimum because each alien constituted a separate violation under the statute. Torres was sentenced accordingly.

## DISCUSSION

### I. *Motion for Acquittal*

We review the district court's denial of a Rule 29 motion for acquittal *de novo*. *United States v. Ruiz–Lopez*, 234 F.3d 445, 447–48 (9th Cir.2001). In doing so, we "review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Neill*, 166 F.3d 943, 948 (9th Cir.), *cert. denied*, 526 U.S. 1153, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999) (citation and internal quotation omitted).

### A. *The Illegal Entry Counts: 8 U.S.C. §§ 1325 and 1326*

Torres' motion for acquittal should have been granted because Torres failed to "enter" the United States. 8 U.S.C. § 1325 prohibits an alien from entering the United States without official authorization. 8 U.S.C. § 1326 prohibits the same conduct from an alien who has been previously removed. It is undisputed that Torres traveled from Mexico to the United States without approval.

Since 1908, federal courts have recognized that "entering" the United States requires more than mere physical presence within the country. *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163–64 (9th Cir.2000). To "enter," an alien must cross the United States border free from official restraint. *Id.* at 1164. An alien is under "official restraint" if, after crossing the border without authorization, he is "deprived of [his] liberty and prevented from going at large within the United States." *Id.* (quoting *Ex parte Chow Chok*, 161 F. 627, 628–29 (N.D.N.Y.), *aff'd*, 163 F. 1021 (2d Cir.1908)). An alien does not have to be in the physical custody of the authorities to be officially restrained; rather, the concept of official restraint is interpreted broadly. *Ruiz–Lopez*, 234 F.3d at 448. "[T]he restraint may take the form of surveillance, unbeknownst to the alien." *Id.* (quoting *Matter of Pierre*, 14 I. & N. Dec. 467 (1973)). When under surveillance, the alien "has still not made an entry despite having crossed the border with the intention of evading inspection, because he lacks the freedom to go at large and mix with the population." *Id.* On the other hand, if an alien is not discovered until some time after exercising his free will within the United States, he has entered free from official restraint. *United States v. Martin–Plascencia*, 532 F.2d 1316, 1317 (9th Cir.1976).

Agent Watkins, who discovered Torres' group attempting to enter the United States, testified that he personally observed the group cross from Mexico into the United States. Agent Watkins relayed

the information to agents in the area. Agent Karttunen followed the group through the brush while Agent Watkins maintained continuous observation until the group was apprehended. Agent Watkins testified that although he lost sight of the group "for a number of seconds" he knew the trail and was able to follow them "up to close to where they were actually apprehended." Between the agents, Torres' group was under continuous observation. Therefore, Torres was never free from official restraint.

### B. *The Smuggling Count: 8 U.S.C. § 1324(a)(2)(B)(iii)*

■ Although Torres never entered the United States for purposes of the illegal entry statutes, he is still subject to criminal liability for smuggling aliens to this country in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). Smuggling aliens to the United States does not require entry. Citing *United States v. Aguilar*, 883 F.2d 662, 681 (9th Cir.1989), Torres' counsel argued in the district court that the official restraint doctrine applied to the smuggling counts. The Assistant United States Attorney agreed, and advised the district court that if the jury found the aliens were never free from official restraint, Torres could not be convicted of bringing them to the United States. Both parties erred in their interpretation of the statute, and we are not bound by their error.

While *Aguilar* does state that the "official restraint" doctrine applies to smuggling cases brought pursuant to § 1324, neither party seemed to realize that *Aguilar* was not decided under the present version of 8 U.S.C. § 1324. *Aguilar* was

decided under a predecessor statute which read:

> Any person, including the owner, operator, pilot, master, commanding officer, agent or consignee of any means of transportation who—(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise.

883 F.2d at 672 n. 2.

■ This section was substantially revised in 1986. Public Law 99–603, Title I, Part B, § 112–100 Stat. 3381. The legislative history indicates that Congress was particularly concerned with "shortcomings and ambiguities in existing law." H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 65 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5669. Particularly, Congress was concerned with smuggling cases that equated "bring into" with "entering." H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 65 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5670. Deliberately overruling case law requiring entry to sustain a smuggling conviction, Congress replaced the words "brings into" with the words "brings to." H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 65 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5670. Thus, we are not bound by our decision in *Aguilar*. *United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989) ("We are not bound by decisions of prior panels if subsequent legislation undermines those decisions").[1]

■ Since the current statute is unambiguous, it should have been interpreted in accordance with its plain meaning. *See Royal Foods Co. Inc. v. RJR Holdings,*

---

**1.** Once Torres' counsel realized that *Aguilar* was not controlling, he filed a letter with this Court pursuant to Federal Rule of Appellate Procedure 28(j) for the purpose of making

additional arguments. We grant the government's Motion to strike the 28(j) letter because it makes new contentions not raised in the briefs or in the district court.

*Inc.*, 252 F.3d 1102, 1106 (9th Cir.2001). The district court, led by both parties, committed a mistake of law in finding the official restraint doctrine applicable to cases where a smuggler brings aliens to the United States. Nonetheless, we find the error harmless. The jury could not have unanimously found Torres guilty of bringing aliens "into" the United States without simultaneously finding he brought aliens "to" the United States. *See United States v. Asher*, 854 F.2d 1483, 1496 (3d Cir.1988) (finding the jury could not have found defendant guilty of mail fraud without simultaneously finding the state was deprived of money, a fact not found by the jury, but required by law). The jury's verdict, therefore, remains sound.

■■■ Torres contends there is insufficient evidence to support his conviction for smuggling. However, Agent Watkins testified that as he watched Torres' group cross the border from Mexico into the United States, "four individuals[were] obviously being directed by one." This individual, according to Agent Watkins, directed the group by "hands, arms, gestures. For instance, motion to stop, sit down. He was this one individual obviously leading, pointing in directions, the trail and route that was selected." Although he could not make out the individual's face, Agent Watkins said he thought the individual was wearing a dark jacket.

Agent Karttunen, who assisted in Torres' apprehension, testified that he also recognized the man in a black coat as the leader of the group. Unlike Agent Watkins, Agent Karttunen actually recognized Torres' face and identified him as the individual who was guiding the group. On this record, we find that a rational trier of fact

could have found that Torres was guiding the other individuals to the United States in violation of 8 U.S.C. § 1324.

## II. *The Jury Instructions*

■■■ When jury instructions are challenged as misstatements of law, we review them *de novo*. *Voohries–Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713 (9th Cir.2001). "When we determine that there is an instructional error, that requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Romo–Romo*, 246 F.3d 1272, 1274 (9th Cir.2001) (internal quotations omitted); *see also United States v. Pierre*, 254 F.3d 872, 877 (9th Cir.2001) (applying harmless error analysis).

Since we find Torres was not free from official restraint, *see supra* p. 598, we do not reach Torres' challenge to the district court's official restraint instruction. We must, however, determine whether the district court committed error by failing to give a specific unanimity instruction for the smuggling counts. Torres asserts there is a possibility that some jurors found he merely attempted to bring aliens to the United States, while others found he completed the crime.[2]

■■■ Ordinarily, a general unanimity instruction is sufficient to instruct the jury that its verdict must be unanimous as to each element of an offense. *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir.1993) (citations omitted). A specific unanimity instruction is only required where there is a possibility of juror confusion or when a "conviction may result from different ju-

---

**2.** Torres raises this unanimity argument only in the context of an asserted instructional error. He does not challenge the indictment as duplicitous, so we have no occasion to

reach the issue decided in *United States v. Ramirez–Martinez*, 273 F.3d 903 (9th Cir. 2001).

rors concluding that the defendant committed different acts." *Id* (citations omitted).[3] The district court did not err in failing to, *sua sponte*, give a specific unanimity instruction, because the verdict indicates there was no confusion or prejudice. Torres' convictions on counts one and six indicates the jurors unanimously found that Torres brought aliens to the United States border and entered illegally.

### III. *The Motion to Sever*

■■■■ Torres alleges the district court committed error by denying his motion to sever the counts brought under § 1325 and § 1326 from the counts brought under § 1324. We need not address this issue. Torres' counsel failed to bring the motion for severance until the morning of trial, immediately before the jury was called. When the district court inquired into the reasons for the delay, Torres' counsel asserted, "There is no rule saying that we have to bring [it] pre-trial." Torres' counsel was mistaken. Rule 12(b)(5) of the Federal Rules of Criminal Procedure specifically provides that requests for severance of charges under Rule 14 must be raised prior to trial. Thus, the motion to sever was untimely.[4] *See United States v. Castro*, 972 F.2d 1107, 1109 (9th Cir.1992) (recognizing that motions made on day of trial are untimely).

■■■■ Moreover, Torres' motion was properly denied on the merits. There was no showing that a joint trial was so manifestly prejudicial as to require the court to order separate trials. *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir.1998).

### IV. *Evidence Regarding the Condition of Torres' Finger*

■■■■ Torres alleges that the district court erred by allowing the government to introduce evidence that Torres' finger was "scratched up." We review the district court's decision to admit or exclude evidence under Rule 403 for abuse of discretion. *United States v. Crosby*, 75 F.3d 1343, 1346 (9th Cir.1996). The Government introduced evidence that only Torres's index finger was badly defaced. According to the Government, this evidence tended to prove that Torres sought to evade the Border Patrol's identification system.[5] The potentially probative value of this evidence was not outweighed by possible prejudice to the defendant. The district court acted within its discretion in admitting the evidence.

### V. *Sentencing*

■■■■ The district court found that it was required to impose a five year mandatory minimum sentence on the basis that each alien smuggled constituted a separate violation of 8 U.S.C. § 1324(a)(2)(B). Torres contends that the district court misconstrued this provision. In construing a statute, we begin with the text. If the text is unambiguous, the statute will be interpreted according to its plain meaning. *Royal Foods v. RJR Holdings Inc.*, 252 F.3d at 1106 (finding that there is no further inquiry if congressional intent is clear from the plain and unambiguous meaning of the language). The text of the statute unequivocally provides that penalties are to be assessed for "each alien in respect to whom a violation of this paragraph occurs." 8 U.S.C. § 1324(a)(2)(B). None-

---

3. Although Torres refers to juror confusion in his briefs, his focus is on the "genuine possibility that different jurors could have convicted him of committing different acts."

4. It is unclear whether the district court denied the motion because it was untimely or because it was not meritorious.

5. The Border Patrol's identification system is based on fingerprints of index fingers only.

theless, Torres alleges that the penalty provision was not intended to apply to "each alien," but rather, was intended to apply to "each conviction." This position is directly contrary to the plain language of the statute and its legislative history. Public Law 104–208, 110 Stat. 3009–566 added the penalty section at issue through a provision entitled, "APPLYING CERTAIN PENALTIES ON A PER ALIEN BASIS." *Id.* Torres' sentence was calculated in accordance with the governing statute.

## CONCLUSION

We reverse Torres' conviction on counts one and six (§§ 1325, 1326) and remand for judgment of acquittal. We affirm Torres' conviction and sentence as to counts two through five (§ 1324).

AFFIRMED IN PART, REVERSED and REMANDED IN PART.