**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kaykeo SOMSAMOUTH, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Khamphouck Somsamouth,**
**Defendant–Appellant.**

Nos. 02–50453, 02–50461.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Filed Dec. 18, 2003.

J. Michael Roake, Roake and Roake, San Diego, CA; Guadalupe Valencia, San Diego, CA, for the defendants-appellants.

Carol C. Lam, United States Attorney, Richard C. Cheng, Assistant U.S. Attorney, United States Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before PREGERSON, FERNANDEZ, and BERZON, Circuit Judges.

FERNANDEZ, Circuit Judge.

Khamphouck Somsamouth and Kaykeo Somsamouth, husband and wife, appeal their convictions for making false representations of material facts to the Social Security Administration (SSA) for the purpose of retaining Supplemental Security Income benefits. *See* 42 U.S.C. § 1383a(a)(2). Primarily, they disagree with the conception that their statements about working were, indeed, materially false. Ms. Somsamouth also claims that she was improperly sentenced. We affirm.

## BACKGROUND

For many years before this proceeding commenced, the Somsamouths collected SSI benefits on the theory that they were disabled to the point that they were unable to engage in substantial gainful activity. However, the SSA became suspicious in April of 2000 when it received an anonymous letter that accused the Somsamouths of fraud because, while receiving SSI benefits, they were working.

Prompted by that letter, Ann Shepard, a claims representative for the SSA, arranged to interview the Somsamouths. At Shepard's request, the couple provided their own interpreter (their daughter) to translate between English and Lao. At the interview, Shepard asked the Somsamouths questions about any income they had received, employment or work they had done, and resources available to them. The couple stated that they were not doing any work at that time. Shepard remained suspicious and, therefore, referred the matter to the SSA's Office of the Inspector General for investigation.

Agent Scott Antolik was assigned to the case and conducted surveillance on the Somsamouths, which revealed that they were engaged in a multitude of activities that had all of the earmarks of working. Antolik observed the couple bringing food containers out of their garage and loading them onto a truck owned by Mr. Somsamouth. During his four surveillances of

them, Antolik saw numerous instances of that activity. He also observed Mr. Somsamouth drive the loaded truck with his wife as a passenger to a local Asian food market. At that market, he saw the couple take the containers from the truck into the market, and return with what looked like food items, which were, in turn, loaded onto the truck. After the Somsamouths left the market, Antolik followed them to the Lao Community Plaza, where they again unloaded and loaded various containers. Antolik then asked Shepard to arrange for a second interview with the Somsamouths, which was to be videotaped. She did and it was.

At the second interview, the Somsamouths brought their son-in-law as an interpreter. Shepard asked them many of the same questions she had asked at the first interview. The Somsamouths gave a recitation of the various disabilities from which they suffered, and indicated their belief that they were not able to work. Shepard also asked each of them: "Since you became disabled, have you done any work or volunteer work?" The answers to all of the questions were recorded on a form by Shepard, and the Somsamouths signed the form.

After the interview, Antolik conducted further surveillance of the Somsamouths. He found the couple at the Lao Community Plaza again. This time he noticed Ms. Somsamouth cooking and working at tables set up behind the building. On another day, Antolik actually went into the Plaza with another agent and ordered food from Ms. Somsamouth. Antolik observed both of the Somsamouths bringing packages back and forth to each other in the kitchen, and then Ms. Somsamouth brought the finished order out. She also took Antolik's payment for the meal and

brought back his change. Soon after that, Antolik repeated the surveillance with a hidden camera, and observed similar behavior by the Somsamouths.

Thereafter, the Somsamouths were indicted for making a false statement and for misrepresentation of material facts in violation of 42 U.S.C. § 1383a(a)(2).[1] After a jury trial, both of the Somsamouths were found guilty of the offenses charged. They were each sentenced to five years of probation and each was ordered to pay restitution. These appeals followed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

■ Our standard of review of a district court's denial of a proposed jury instruction turns on the nature of the error alleged. *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir.2000). The "question whether the district court's instructions adequately presented the defendant's theory of the case" is reviewed de novo. *Id.* "If the district court's instructions fairly and adequately covered the elements of the offense, however, we review the instruction's precise formulation for an abuse of discretion." *Id.* (internal quotation marks omitted).

■ We review the denial of a defendant's motion for acquittal under Federal Rule of Criminal Procedure 29 de novo. *United States v. Gonzalez–Torres*, 309 F.3d 594, 598 (9th Cir.2002). In so doing, we " 'review the evidence presented against the defendant in the light most favorable to the government to determine

---

1. The statute reads: "Whoever ... at any time knowingly and willfully makes or causes to be made any false statement or representa- tion of a material fact for use in determining rights to [SSI] benefit[s] ... shall be fined ... imprisoned ... or both."

whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (citation omitted).

■ While we review the district court's denial of a motion to suppress evidence de novo, "[f]actual findings of the district court are reviewed for clear error." *United States v. Fernandez–Castillo,* 324 F.3d 1114, 1117 (9th Cir.2003). We also review the district court's factual findings in the sentencing phase of the trial for clear error, although we review its interpretation of the Sentencing Guidelines de novo. *United States v. Bynum,* 327 F.3d 986, 993 (9th Cir.2003).

## DISCUSSION

The Somsamouths attack their convictions on two major grounds: they claim that the district court erred when it declined to define the word "work" for the jury; they go on to claim that the evidence does not support the verdict. Mr. Somsamouth also launches the subsidiary argument that evidence of the interview containing the Somsamouths' lies should not have been admitted because of allegedly unreliable interpretation. In addition, Ms. Somsamouth complains about the district court's determination of loss for sentencing purposes. We will discuss each of these issues in turn.

### A. *Definition of Work*

The Somsamouths assert that the simple word "work" had to be defined for the jury because, they say, without further instruction the jury could misunderstand the legal meaning of the word. We disagree.

■ We start with the obvious, almost banal, proposition that the district court cannot be expected to define the common words of everyday life for the jury. Were it otherwise, jury instructions would become a dense tangle of definitions that might please a lexicographer or an etymol-ogist, but no one else, and that would, in fact, be disruptive, distracting, disconcerting and dysfunctional. As it is, "the district court need not define common terms that are readily understandable to the jury." *United States v. Shryock,* 342 F.3d 948, 986 (9th Cir.2003); *United States v. Hicks,* 217 F.3d 1038, 1045 (9th Cir.2000).

■ But, say the Somsamouths, the average person might believe that work does not necessarily require substantial gainful activity of the sort that generates wages or other economic benefits. So much is true, and if that is the belief of the average person, it is a correct belief. *See, e.g., Webster's Third New International Dictionary* 2634 (1986) (defining work as "activity in which one exerts strength or faculties to do or perform ... sustained physical or mental effort valued as it overcomes obstacles and achieves an objective or result"); *The American Heritage Dictionary* 2056 (3d ed.1992) (defining work as "[p]hysical or mental effort or activity directed toward the production or accomplishment of something"). So, for example, people commonly speak about working around the house, although they receive no monetary compensation for that. And one might do work for a charity or a friend, which achieves great objectives, but which generates no income whatsoever for the worker. The latter concept *was* nicely encompassed in the question to the Somsamouths about whether they did volunteer work, to which they, of course, answered "no."

Nevertheless, argue the Somsamouths, for SSI purposes that is not the case. In that they are incorrect, as a review of the regulations will demonstrate. For example, the very regulation that they cite points up the crucial difference when it uses the following words: "If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled...." 20 C.F.R.

§ 416.920(b). Thus, the regulation recognizes the fact that substantial gainful activity is only a subset of work. The regulations thereafter give a more detailed description of the way SSA will evaluate whether the "work you have done" is also "substantial gainful activity." 20 C.F.R. § 404.1574; *see also* 20 C.F.R. § 416.972. Perhaps more pointedly, and even more directly related to this case, the regulations state:

> Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. § 416.971.

In other words, work is not an arcane concept in this context, and there was no need for the district court to define it further. If the court had defined it and done so correctly, that would not have been helpful to the Somsamouths. In fact, the district court's failure to do so gave the Somsamouths an opportunity to suggest that work really is a more limited concept or that the Somsamouths at least thought so; that opportunity was exploited by them.[2] There was no instructional error.

### B. *Sufficiency of the Evidence*

Somewhat akin to their instructional argument is the Somsamouths' claim that their falsehoods about work cannot have been material because it has not been shown that their working was also substantial gainful activity. In so arguing, they ask us to take an overly crabbed view of materiality.

While we have not had occasion to explore the meaning of "material fact" in the context of 42 U.S.C. § 1383a(a)(2), it has been explored in many other contexts. In the income tax area, for example, the Supreme Court has explained the reach of a statute which made it a crime to file a tax return that the defendant did not " 'believe to be true and correct as to every material matter.' " *Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999) (citation omitted). The Court pointed out that "[i]n general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.' " *Id.* (citation omitted).

We have addressed the meaning of the general statute covering false statements of "material fact" to government agencies—18 U.S.C. § 1001—and have defined the concept as follows: "A statement is considered material if it has the propensity to influence agency action; actual influence on agency action is not an element of the crime." *United States v. Vaughn*, 797 F.2d 1485, 1490 (9th Cir.1986); *see also United States v. Facchini*, 874 F.2d 638, 643 (9th Cir.1989) (en banc). Similarly, in commenting on the meaning of "material misrepresentation," which is one of the elements of mail fraud,[3] we have stated: "A false promise, statement or representation is material if 'it is made to induce action or reliance by another' or has 'a natural tendency to influence or is ... capable of influencing another's decisions[.]' " *United States v. LeVeque*, 283 F.3d 1098, 1103–04 (9th Cir.2002) (citation omitted). We see no reason to deviate from that uniform approach at this time, and, therefore, determine, as the district

---

**2.** That is to say, the Somsamouths could not have suffered prejudice from the lack of a definition. *See Gonzalez–Torres*, 309 F.3d at 600; *United States v. Belgard*, 894 F.2d 1092, 1095 (9th Cir.1990).

**3.** 18 U.S.C. § 1341.

court essentially did, that the meaning of material fact for purposes of 42 U.S.C. § 1383a(a)(2) is the same as the meaning we have used in the context of 18 U.S.C. § 1001. *See Vaughn*, 797 F.2d at 1490.

■ The above being so, it is apparent that the Somsamouths' attack on the sufficiency of the evidence must fail. The issue was not whether they were performing substantial gainful activity; it is whether their false statements had a propensity to influence agency action. Plainly, the answer is yes. Even if the extensive work activities in which the Somsamouths were engaged were not actually generating income for them, it is pellucid that truthful answers to the SSA's questions about their activities would have led to further investigation at least. The Somsamouths' lies were designed to influence the agency into not investigating them or giving further consideration to whether they were, in fact, engaging in substantial gainful activities. Our earlier quotation from 20 C.F.R. § 416.971 nicely underscores this point, by pointing out that even if work actually done was not substantial gainful activity, it can show that the person is able to do more.

Indeed, Mr. Somsamouth well understood the point; he admitted that he had lied about his ability to drive for that very reason. That and the Somsamouths' other misrepresentations bring home the fact that their statements about their work activities were both calculated to influence and capable of influencing the SSA in the performance of its duties and in the making of its decisions.[4] Certainly, a rational juror could find that the government met its burden of persuasion in this case. *See Gonzalez–Torres*, 309 F.3d at 598.

## C. Sentencing

■ Ms. Somsamouth complains about the measure the district court used in determining the amount of the government's loss for sentencing purposes. There is no dispute that her conviction for fraud on the SSA leads to the application of the United States Sentencing Guidelines § 2B1.1.[5] The court was required to determine just how much she had euchred the government out of because "[i]n a case involving government benefits (*e.g.*, ... entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients." *Id.* at comment. (n.2(F)(ii)).

When fraud is involved, the exact loss is sometimes difficult to come by. So it is here. Unless the Somsamouths were followed about every day for years, there was bound to be some uncertainty about the precise reach of their fraud over time. Thus, the district court had to make a "reasonable estimate of the loss." *Id.* at comment. (n.2(C)). That includes consideration of "the scope and duration of the offense." *Id.* at comment. (n.2(C)(iv)). And, because of the difficulties which are often encountered, we have been admonished that "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." *Id.* at comment. (n.2(C)).

---

4. To confirm the accuracy of the translation provided by the Somsamouths' son-in-law, during trial the government entered into evidence a transcript prepared by a court-certified interpreter who reviewed the videotape of the second interview. The Somsamouths have not challenged the competency of the court-certified interpreter who prepared the transcript. Although the transcript reveals a number of inaccuracies in the son-in-law's translation, it does confirm that there was no error regarding the critical questions and answers.

5. All references to the Sentencing Guidelines are to the November 1, 2001, version thereof.

In this case, there is no dispute on appeal about the date that the fraudulent receipt of benefits stopped—that is agreed to be the date of the Somsamouths' arrest on October 3, 2001. Nor is there a dispute about the monthly amounts received during the relevant period. What is disputed is the date that should be used for the commencement of the calculation period. Ms. Somsamouth says that the only proper commencement date is the date that actual surveillance began in October of 2000. The government argues that a more reasonable commencement date was the date of the letter that brought their fraud to the attention of the SSA—April 2000. The district court selected the latter date, and we cannot say that the evidence will not support its decision. Indeed, because the letter proved to be quite accurate, it was more than reasonable for the district court to determine that the Somsamouths were engaged in the later observed activities as early as the date of that letter, and probably even before that.[6] The district court did not clearly err. *See Bynum,* 327 F.3d at 993.

## CONCLUSION

Since before 1990, the Somsamouths received SSI benefits on the basis that their various disabilities rendered them unable to work. However, by 2000 they were working, made false statements about that to SSA, and were convicted of making those false statements.

We now hold that this peripeteia regarding their fortunes cannot itself be reversed by claims that they could not have been engaged in work unless it was substantial gainful activity and that their untruths were not material as a matter of law.

6. Ms. Somsamouth's confession indicated that she had been engaged in the work activi-

Also, we find no other error in the district court's actions.

AFFIRMED.

ties as much as one year before SSA received the letter.